## MILLS and others *vs.* HUNT.

Where goods, amounting in the aggregate to upwards of $100, are purchased at *auction*, in *several parcels*, upon *distinct* and *separate bids*, to be paid for in a note at a future day, the whole constitutes but *one contract*, and the *delivery* of *some of the parcels* is sufficient to take the case as to the residue, out of the operation of the statute of fraud.

Upon the sale of goods for an *approved endorsed note*, in case of question as to the character of a note tendered, *it seems* the *purchaser* is bound to prove, either that the vendor *knew* the note to be good, or had the means of *conveniently ascertaining* the fact.

An *auctioneer* acting as the *agent* of another in the sale of property, is *personally* responsible as vendor, unless at the time of the sale he disclose the name of his principal ; his general employment as auctioneer is not *per se* notice that he acts as agent.

*It seems* that even when an agent discloses the name of his *principal*, he is personally liable where he signs in his own name a written contract which does not upon its face show that he contracts as agent.

ERROR from the supreme court. Hunt brought an action in the New-York common pleas for the *non-delivery* of goods purchased by him at a sale by the defendants as *auctioneers;* the terms of sale were *approved endorsed paper* at six months for sums over $100, and under that amount *cash*, without discount. The plaintiff purchased five parcels, which were separately struck off to him, and amounted together to the sum of $224.40. A bill of parcels was delivered to the plaintiff, headed " L. J. Hunt, bought of Mills, Brothers & Co." the latter being the name of the defendants' firm, and he was directed to call on the *owners* for the goods, which were not present at the sale, but were sold by sample. He accordingly called on one of the owners, and received *four* of the parcels, but not receiving the *fifth*, he proceeded to the counting-house of the defendants, and tendered to a clerk there an endorsed note for the amount of his bids, and demanded the goods purchased by him, telling him at the same time that if he did not like the note, he would give him the money, deducting the discount. The clerk answered that " he knew nothing and said nothing." All this was in the presence and hearing of one of the defendants, and the clerk when subsequently called by the defendants as a witness, testified

that they expected difficulty and trouble with the plaintiff about the goods, and had determined to say nothing about the matter, because they apprehended a law suit. It appeared on the trial that the goods did *not* belong to the defendants, and that in the sale they acted *merely as agents*, but nothing on that subject was stated at the time of the sale. The plaintiff proved the value of the *fifth* parcel, and rested. The defendants' counsel moved for a *nonsuit*, on the grounds : 1. That the contract was void within the statute of frauds ; 2. That the tender of the note was not sufficient ; 3. That the action would not lie against the defendants, they having acted merely as *agents*, the *principals* being known ; and, 4. That there was no proof of damage. The presiding judge denied the motion for a nonsuit, and the jury under his charge found a verdict for the plaintiff, on which judgment was entered. The defendants removed the record into the supreme court, where the judgment was *affirmed*. See opinion delivered in supreme court, 17 *Wendell*, 375, *et seq.* Whereupon the defendants sued out a writ of error, removing the record into this court, where the case was argued by

*T. Sedgwick, jun.* for the plaintiffs in error.

*J. R. Whiting*, for the defendant in error.

*Points for plaintiffs in error :*

1. The plaintiffs in error in this cause were mere agents for the sale of the property, and had nothing to do with its delivery.

2. The purchase of each article struck off was a distinct contract. 2 *R. S.* 70, 2d ed. *Simon* v. *Motivos*, 1 *Black. R.* 600. *Rugg* v. *Minett*, 11 *East.* 216. *Emerson* v. *Heelis*, 2 *Taunt.* 38.

3. At all events, the contracts were distinct in regard to the different owners.

4. Whether this be so or not, the delivery of a part by one owner could not bind the auctioneer as to the part not delivered by another owner ; the delivery not being in any respect a part execution of the alleged entire contract of sale.

Mills *v.* Hunt.

5. The memorandum or bill of sale is not sufficient to take the case out of the statute of frauds. *Hicks* v: *Whitmore*, 12 *Wendell*, 548.

6. There was no sufficient tender. · *Hicks* v. *Whitmore*, 12 *Wendell*, 548. *Dunham* v. *Jackson*, 6 *id.* 22.

*Points for defendant in error :*

1. The auctioneers, not having disclosed their agency, may be treated as principals. *Hanson* v. *Roberdeau*, *Peake's N. P. C.* 120.

2. The sale, although in parcels, on distinct biddings, is to be treated as one sale. *Baldy* v. *Parker*, 2 *Barn. & Cress.* 37.

3. The delivery of the bill of parcels with the partial delivery of the goods, takes the case out of the statute of frauds. *Descard* v. *Bond*, *Stark. Ev.* 610, *pt.* 4, *n. k.* 2 *R. S.* 70, § 3.

4. The tender of the note was sufficient.

After advisement, the following opinions were delivered ;

By the Chancellor. . The sale of the several articles in this case was made by Mills, Brothers & Co. and. the bill of parcels made out in their copartnership name, without disclosing the fact that they were acting as the agents for others. The mere fact that they were *auctioneers*, was not sufficient notice to the purchaser that they were not selling their own goods. *Jones* v. *Littledale*, 1 *Nev. & Perry's R.* 677. In the case of *Magee* v. *Atkinson*, 2 *Mees. & Wels. R.* 440, where the broker had sent in a note of the sale to the purchaser in his own name, it was held that evidence of a custom in Liverpool, to send in brokers' notes without disclosing the name of the principal, could not be received for the purpose of protecting the broker from personal liability. At this day the law must be considered as settled, that a vendor or purchaser dealing in his own name, without disclosing the name of his principal, is personally bound by his contract ; and it makes no difference that he is known to the other party to be an auctioneer, or broker, who is usually employed in selling property as the agent for others. Even where he disclo-

ses the name of his principal, if he signs a written contract in his own name merely, which contract does not upon its face show that he was acting as the agent of another, or in an official capacity in behalf of the government, he will be personally bound thereby.

The bill of parcels which was delivered in this case, although it does not upon its face contain the necessary requisites to take the case out of the statute of frauds as a written contract for the sale and delivery of the goods, is still to be regarded as evidence that the several articles purchased by Hunt at the same auction sale, though in different bids and upon different catalogues, were considered by the vendors as embracing one contract, and upon which the vendee was entitled to credit for six months, as the whole amount of his purchases at that sale exceeded $100. He was in the situation of a purchaser who goes to a store and buys different articles at separate prices for each article, under an agreement for a credit of six months, upon approved paper for the aggregate amount of such sales; in which case there can be no doubt that a delivery of a part of the articles so purchased, without any objection at the time as to the delivery of the residue, is sufficient to take the case out of the statute of frauds as to the whole goods so purchased. *Shirley* v. *Heyward*, 2 *H. Black.* 509. *Baldey* v. *Parker*, 2 *Dowl. & Ryl.* 222. *Elliott* v. *Thomas*, 3 *Mees. & Wels.* 170. The case would be different where the purchaser, either at a public or private sale, paid for and took a delivery of some of the separate articles only, leaving the residue undelivered and wholly unpaid for; or where several articles were purchased at the same time to be paid for on delivery, and the purchaser afterwards received and paid for some of the separate articles only. *Morton's Law of Vend.* 59. The nisi prius decision of Lord Ellenborough, in *Hodgson* v. *Le Bret*, 1 *Campb. R.* 233, conflicts with the subsequent decision of the court of king's bench in *Baldey* v. *Parker;* and it was distinctly overruled by the court of exchequer in the more recent case of *Elliott* v. *Thomas*. The delivery in the present case was a delivery of four out of the five parcels from

Mills *v.* Hunt.

the entire bill, and the only reason why the fifth parcel was not then delivered was, because it was not on the catalogue of the agent who made the delivery of the residue ; but there was no intimation at the time, that the auctioneers intended to deliver this part of the goods only. The subsequent refusal to deliver the fifth parcel was, therefore, a breach of the contract on their part, for which the purchaser was entitled to a remuneration in damages.

The tender of the note to the clerk, under the circumstances of this case was, unquestionably, sufficient. A tender to the clerk of the firm, who had a general authority to receive payment, was as valid as a tender to his principals. If one of the members of the firm was present, and had any objection to the note offered, it was his duty to speak ; and if the vendors had revoked the general authority of the clerk in this particular case, for the purpose of avoiding the effect of a tender, and kept out of the way themselves, it ought not to protect them from liability.

Upon a sale of goods for an approved endorsed note, if upon the note's being tendered, the vendor makes no objection to it, the note must be presumed to be good until the contrary appears. But if it is objected to by him at the time, on the ground that it is not good, the burthen of proof is thrown upon the vendee to show that it was such a note as the vendor ought to have received and approved ; and such as he either knew to be good or had the means of ascertaining to be so, without any unreasonable trouble. In this case, however, the refusal to receive the money instead of the note, shows that the note was not refused on any such ground.

Upon the whole there is no reason to doubt the correctness of the decisions of the courts below upon all the questions raised in this case. I think the judgment should, therefore, be affirmed ; and in my opinion it is a proper case for double costs, to compensate the defendant in error for the extra costs to which he has been subjected by this unreasonable litigation.

By Senator Edwards. I am for affirming the judgment of the supreme court for the following reasons :

Mills *v.* Hunt.

1. The auctioneers not having disclosed their agency and made known their principals, must be held personally responsible.

2. The property having been sold to the same individual at the same sale and under the same terms, though in separate parcels and for different prices, was virtually a sale under one contract, *Baldey* v. *Parker*, 9 *Com. Law R.* 16; and therefore a delivery of part of the goods was sufficient to take the case out of the statute of frauds. 2 *Starkie on Ev.* 610. 2 *R. S.* 70, § 3.

3. A tender to an agent, clerk or servant, authorized to receive money in the transaction of the business of his principal, is as valid as a tender to the principal. *Goodland* v. *Bluwith*, 1 *Campb.* 478. *Moffat* v. *Parsons*, 5 *Taunt.* 307. 1 *Esp. R.* 350. The plaintiff, therefore, complied with the terms of the contract on his part, the responsibility of the parties to the note not having been objected to ; and the defendants are liable to respond in damages for not having performed upon their part.

Upon the question being put, *Shall this judgment be reversed ?* all the members of the court decided in the negative.

Whereupon the judgment of the supreme court was unanimously AFFIRMED.