Bosworth, J.
(dissented.)
The complaint alleges, that between the 9th of July, 1846, and the 26th of July, 1847, the plaintiff loaned to the defendant $4,000 in cash, and a promissory note of the plaintiff, which note the plaintiff had paid, and alleges a balance of $l,965Tg0, with interest from ¡November 27,1850, to be due.
The defendant, in his answer, denies that any loan was made to himself. He avers that he received the $4,000, as the agent and attorney of Oathalina Corbett, as the consideration money of an assignment or assignments of a mortgage for $4,000, executed by Tennis E. Dikeman to Oathalina Corbett, bearing date the 15th of ¡November, 1841.
That he received this money as the agent and attorney of Oathalina Corbett, “as the consideration money payable by said plaintiff to the said Corbett, upon the assignment of said mortgage,” and the assignment of said mortgage was received by said plaintiff in full payment and satisfaction of said sum of money.
The allegations of new matter contained in the answer are put in issue by the reply.
The pleadings are sworn to. '
The evidence is entirely documentary. The paper of July 26,1847, shows incontestibly that the bond and mortgage were not sold to or purchased by Brandreth. Out of the proceeds ■ of it when foreclosed, $4,000, with interest from the date of that paper until paid, was to be “refunded” to Brandreth, and “the residue due on said mortgage was to be paid to the defendant.”
This paper is signed by the plaintiff and the defendant. It is clear, then, that this money was not paid as the price or consideration of the assignment. The whole ownership of the bond and mortgage did not belong to Brandreth. The whole of the *402 moneys owing upon and secured by them, if collected, would not belong to him.
Hence a material allegation of the answer is disproved. That the defendant received the whole $4000, is admitted. That this sum, “ with interest at the rate of seven per cent, per annum, until paid, is to be refunded to said Brandreth,” this agreement expressly states.
Hence it is evident that this sum was “ advanced,” and not paid as the price of the bond and mortgage. That it was to be “ refunded” with interest until paid.
. To whom was it advanced, and by whom was it to be refunded ? The defendant admits in his answer that he received it, but denies that it was to be refunded at all events. He answers, that the assignment was taken in payment and satisfaction of it.
That the assignment was taken in payment and satisfaction of the' $4,000, is disproved by the defendant’s agreement, and that it was to be refunded is expressly stated in the same instrument.
The' defendant received the money. If he received it as principal, he is the person bound to refund it. He avers that he received it as agent. On this, the reply takes issue. The paper of July 26,1847, does not profess on its face to have been signed by him as agent, nor does it intimaté that he received the money as agent. It recites, that he had caused the bond and mortgage to be assigned, and had received “ on account thereof,” $4,000.
This language implies that the assignment was an act, in respect to which he was the principal, and in good sense and legal effect is equivalent to saying that he had assigned them. The agreement does not recite that Hrs. Corbett had assigned them, or that she was the owner of, or had any interest in them, or in the money received from the plaintiff, or that she was to be paid the excess owing on the bond and mortgage over and above the amount advanced by Brandreth.
Although the fact of his agency was distinctly put in issue by the pleadings, the defendant gave no evidence to show that he was in truth such agent, or even professed to be, when he "obtained the additional advance of $2,250.
*403 If the right of the plaintiff to recover is to be determined . solely by the terms and legal import of the paper of the 26th of July, 1847, I think it undeniable that the defendant would be regarded as the person to whom the advance was made, and who was to refund it.
This is the last agreement executed in point of time. If this imposes a personal obligation on the defendant, then I think . that he cannot claim exemption from such liability, even if the papers of July 9th, and October 10th, 1846, are consistent with the idea that at those dates he was acting as agent, unless he proves affirmatively that he in fact acted throughout -as agent, and that he so stated to Brandreth.
To hold, that as all the papers evidently relate to distinct parts of the same transaction, and that enough is disclosed on the first to prevent the defendant from being estopped- from proving that he acted throughout as agent, is altogether a different proposition from holding that the first shows that he in fact acted only as agent, at the time it was executed, and also at the time when the last was executed, which imports on its face that he acted as principal and on his own account.
The first paper in order of time is in these words, viz,:—
“Received N. Y. July 9,1846, from Dr. Brandreth, his note at 90 days for $1,750, to be provided for and paid by me, out of the first proceeds of a bond and mortgage left in my hands for collection, drawn by Tennis E. Dikeman in favor of Cathalina Corbett.
(Signed) Charles W. Sandford,
Sol. for said C. Corbett.”
In this instrument the defendant personally undertook to pay this note out of the first proceeds of a bond and mortgage. I think he also undertook to collect, or endeavor to collect, the bond and mortgage, to raise the means of paying it. This note was evidently loaned. To whom was it loaned ? Was it loaned to Cathalina Corbett ? He adds to his signature, that he was her solicitor. That does not prove that it was loaned to her. Can it be implied that he had received this bond and mortgage from her, to foreclose on her account? This paper does not • *404 state that lie had. On other facts proved by record evidence, it is not apparent how that fact could be so.
On the 15th of May, 1843, over three years previously, she had executed her bond to John Strang for $2,000, and had assigned to him the bond and mortgage in question as collateral security for its payment, which assignment was recorded on the 14th of June, 1843.
Strang held this assignment until May, 1847, nearly a year after this paper of July 9,1846, was executed.
Without actual proof of the fact, it cannot be presumed, in contradiction of this evidence, that the bond and mortgage were in the hands of the defendant on the 9th of July, 1846, as the agent of Mrs. Corbett, or that he held it to be foreclosed by him as her solicitor. *
The legal title to them was in John Strang, and when foreclosed, he was entitled, as a matter of legal right, to be first paid out of the proceeds, the amount due on Mrs. Corbett’s $2,000 bond which she had executed to him.
If he was the agent of any one, the presumption most favorable to fair professional conduct is, that the defendant, in agreeing that the first proceeds of this bond and mortgage, to the extent of $1,750, should be applied to pay the note borrowed of the plaintiff, made such agreement in behalf of the party to whom such proceeds of right belonged. It is conclusively shown that they belonged to Strang and not to Mrs. Corbett. What was done with this $1,750, is not shown.
The fact that Strang, by assignment, held the bond and mortgage in question, as security for $2,000 due him, in connexion with the terms of the paper of July 9,1845, and the one of October 10, 1846, the next in the order of time, furnishes some grounds for inferring, that the $1,750 note was obtained to be delivered to Strang. Whether the defendant was interested as principal, or acted as agent for Mrs. Corbett, or Strang, or on his own account, in obtaining the money, is the fact to be ascertained from the paper writings put in evidence.
The paper of October 10, 1846, the second in the order of date, is in these words.
“Due Dr. Benjamin Brandreth seventeen hundred and fifty *405 dollars, bearing interest from this date, and for which I am to give him my note, endorsed by John Strang, payable at three months, or an assignment of a mortgage now in my hands for collection, made by Tennis E. Dikeman to Cathalina Corbett, on house, No. 250 Elizabeth street, out of the proceeds of which mortgage said $1750 and interest is to be paid.
“ ChAeles W. Samdeoed.
“New York, October 10,1846.”
It will be borne in mind, that the note for $1,750 fell due on this day. The defendant had not provided for and paid it? according to his agreement of July 9th, It does not appear that he had taken a step towards foreclosing the mortgage. It became necessary for the plaintiff, of whom it had been borrowed, to pay it, or suffer it to be protested.
The defendant then entered into a new agreement, by the express terms of which he acknowledged himself indebted to the plaintiff in the sum of $1,750, bearing interest from its date at the rate of 7 per cent., the payment of which he agreed to secure in one of two specified ways.
It is well settled that where one person, by instrument in writing, acknowledges á certain sum to be “ due” to another, an action will lie to recover it. The acknowledgment of indebtedness itself creates a legal liability sufficient to sustain the action. The language is equivalent to a formal promise to pay it.
Elder v. Roux, 15 Wend. 218, and cases there cited. The consideration of the indebtedness thus acknowledged, is Brandreth’s note of $1,750, mentioned in the paper of July 9, 1846, and which the defendant personally promised to provide for and pay.
This agreement is not signed as solicitor or agent for any person, and the $1,750 mentioned in it have not been repaid.
Whose contract is it.? In terms it is his. And even though he had added to his name the word agent, or solicitor, yet when personally sued on it, he could only avoid a recovery against himself, by showing that he was in fact the agent of another person, and authorized to contract on such terms (Rossiter v. Rossiter, 8 Wend. 494; Mills v. Hunt, 20 Wend. 431-434).
*406 The onus of showing actual agency and authority lies on the agent; describing himself as agent does not prove him to be an agent, nor is it any evidence of that fact (White v. Skinner, 13 J. R. 307-311).
The only effect of adding the designation of agent, is, to make it competent for him to prove, when sought to be charged personally, that he was in reality acting as a known agent.
Suppose, after executing the paper of October 10, 1846, the defendant had failed, or refused to give his note at three months, endorsed by Strang, or an assignment of the bond and mortgage, could Cathalina Corbett have been sued on that agreement, as being her agreement, to recover back the $1,750 ?
It does not purport to have been made on her behalf, nor does her name appear on it as principal. By well settled cases, it is, in judgment of law, the personal contract of the defendant (Pentz v. Stanton, 10 Wend. 271; Stackpole v. Arnold, 11 Mass. 27).
“ It is not sufficient that a person, in order to discharge himself from a promise in writing, shoxdd show that he was in fact the agent of another, but it should be made to appear that he treated as agent, and actually bound his principal by the contract.” Here there are no words, in either of the contracts of October 10,1846, or. of the 26th of July, 1847, which furnish any indication of an intent to charge any person other than himself And no action would lie against the alleged principal, on either contract merely, without extrinsic proof (Arfredson v. Ladd, 12 Mass. 178).
It may be, that as the first paper signed by the defendant has, as an addition to his signature, the words: “ Sol. for said C. Corbett,” it is competent for him to show that in fact he acted as agent, and at the time so avowed to the plaintiff, and that he had no personal interest in the matter (Evans v. Wells, 22d, 324-341).
But without intimating any opinion on this point, it is sufficient to say, that although the fact of his being an agent was put in issue by the pleadings, and although he held the affirmative of that issue, he offered no evidence to establish it. The contracts of October, 1846, and of July, 1847, the two last in *407 order of time, do not on their face purport to he the contracts of Mrs. Corbett, or to have been made in her behalf.
I think it cannot be denied that if the contract of the 10th of October, 1846, had not been performed, or if it had turned out that the bond and mortgage recited in that of July, 1847, to have been assigned, had previously been paid, or had been forged, an action would have lain on either against the defendant personally, and not against C. Corbett, without extrinsic proof; but whether such proof would have been admissible is a question that does not now arise.
If this be so, then the only point left, bearing on the question of the defendant’s personal liability, is this. Did the plaintiff advance his $4,000 upon an agreement to look solely and exclusively to the proceeds of the assigned bond and mortgage ?
The agreement of July 27,1847, does not so state in express terms. Its terms perhaps imply that the parties contemplated the proceeds would prove sufficient to reimburse the $4,000 with interest, and leave a surplus to be paid to the defendant.
But that and the paper next prior in date, seem to indicate very clearly, that the money advanced by the plaintiff was a loan, and was to be refunded at all events.
In the paper of October, 1846, the defendant, in addition to acknowledging himself personally indebted for the amount of $1,750, agreed to give security for its payment.
The security for the repayment of the $1,750 was to be either his own note at three months, with John Strang as an endorser, or an assignment of the whole of his bond and mortgage, the agreement being that if the bond and mortgage were assigned, the $1,750 and interest should be paid out of its proceeds. This $1,750 was lent, and has not been repaid. •
This paper shows, that on failure to provide for and pay the note borrowed on the 9th of July, the defendant, on the day of its maturity, acknowledged himself indebted, as principal, to-the plaintiff, for the amount of it, with interest until paid; and in addition agreed to furnish to the plaintiff one of two kinds of security for its payment. All that the plaintiff had advanced up to this time was $1,750. This was incontestibly lent. The defendant had obtained the loan, and signed a contract acknowledging himself the debtor.
*408 The next paper executed by the defendant was that of the 26th of July, 1847. At the latter date the defendant had been personally the debtor of the plaintiff for $1,750 lent, from the 10th of the previous October.
On the 26th of Tilly, 1847, he and the plaintiff signed a contract in these.words:—
“ C. W. Sandford, having caused a bond and mortgage for $4,000, from Teunis E. Dikeman to Cathalina Corbett, to be assigned to Dr. Benjamin Brandreth, has received from him on account thereof, the sum of four thousand dollars, bearing interest from the date hereof; and said mortgage is to be foreclosed immediately, and out of the proceeds the said sum of $4,000 is to be refunded to the said Brandreth, with the interest for the same at the rate of seven per cent, per annum, until paid, and the residue due on said mortgage is to be paid to the said C. W. Sandford.
(Signed)
B. Bbakdbeth,
C. W. Sakdeobd.”
Between the date of this agreement; and the 10th of the previous October, Mrs. Corbett assigned to the plaintiff on the 20th of Uoyember, 1846, the bond and mortgage, subject to the assignments which she had theretofore made of the same by way of mortgage on the same; and Strang, on the 21st of May, 1847, also assigned to the plaintiff the same bond and mortgage, subject only to the proviso contained in the assignment thereof, which Mrs. Corbett had made to him, which proviso was, that on Mrs. Corbett paying -her bond of $2,000, executed to him, with the interest on the same, the said assignment to Strang should be void.
■ These papers indicate to me, in the absence of all other evidence, that the defendant owned the bond and mortgage, subject to the assignment of them held by Strang, or had some other personal interest in the moneys that might be collected on them over and above what might be required to pay Strang.
Hence his personal undertaking to repay the $1,750 first borrowed. Hence the last agreement states, not that Mrs. Corbett *409 had assigned the bond and mortgage, but that he had caused them to be assigned. An assignment from both her and Strang was essential'to a full assignment. If the agreement of July 26,1847, imports that the defendant obtained the money and contracted as principal, then it follows—inasmuch as by a reference to the previous contracts, whatever may be the effect of that of July 9th, standing alone, it appears, that on the 10th of October, 1846, the defendant acknowledged himself personally indebted for §1,750, of this §4,000, and that he .continued thus indebted, until he recovered the balance of the §4,000— that the contract of July 26 creates, primó, facie, no other liability as to the whole sum lent, than he had expressly incurred in respect to so much of it as had been lent prior to that date. n
The paper of July, 1847, states, ‘that defendant has received §4,000, “bearing interest from the date hereof.” If the plaintiff simply purchased at his own risk, four thousand dollars in amount of the moneys owing on and secured by the bond and mortgage, this expression, “ bearing interest from the date "hereof,” is an inapt one to indicate the transaction. It is very clear that he did not take an assignment of four thousand dollars in amount, as a satisfaction of his advance. Because, no matter how large the amount due on them, he had a right to the whole proceeds, unless they exceeded his advance and interest.. It is equally clear that he did not take the assignment out and out as a satisfaction of the .sum advanced. For, if the proceeds amounted to more than the sum advanced, he was to pay the surplus to the defendant.
Hence it is evident that all" the issues made by the pleadings are proved against the defendant.
1. It is incontestible that he personally received the §4,000 from the plaintiff, and that it has not been refunded.
2. He says, “ the said mortgage was received by said plaintiff in full payment and satisfaction of said sum.” This is disproved. The answer does not aver that it was advanced on an agreement of the plaintiff to take the risk of the proceeds of the mortgage being sufficient to reimburse the advance with interest, or to look exclusively to such proceeds for re-payment.
*410 3. He says in the answer, that he received those moneys “ as the agent or attorney of Cathalina Corbett.” This is denied by the reply. He gives no proof of the fact. The contracts of October, 1846, and July, 1847, which acknowledge the receipt of the moneys, are, in judgment of law, his contracts. They disclose no principal, nor do they intimate that the defendant had one.
In judgment of law, therefore, he received the moneys as principal, and on his own account. He is liable to repay them. He did not receive them as a gift, but as moneys bearing interest from the date of his receipt of them, and to be refunded with interest until paid. The bond and mortgage were assigned as security for their re-payment, and not upon any agreement of the plaintiff to advance the money and take the risk of realizing sufficient from the mortgage to reimburse himself. I cannot therefore resist the conclusion, that the ruling at the trial, on the evidence given, was correct.
What the position of the defendant would have been, if he had proved that throughout these transactions he had in fact acted as the agent of Mrs. Corbett, which fact was put distinctly in issue by the pleadings, and whether he could prove that fact in contradiction of the clear legal import of the agreements of October 10, 1846, and of July 26, 1847, it is unnecessary to undertake to decide. It is sufficient to say, that no evidence of such agency was given or offered, except such as appears on the face of the papers; and on and by the last two he appears and contracts as principal.
The answer does not allege that the plaintiff was’ guilty of any neglect in foreclosing the mortgage, that the market value of the premises was higher at any time between the 26th of July, 1847, and the day of sale, than on the latter day, or that they did not in fact sell for all they were worth, or that any trick or artifice was resorted to by the plaintiff to become a purchaser at less than their actual value.
I find nothing in the agreements to justify the conclusion that the plaintiff advanced his money on an agreement to look only to the assigned bond and mortgage for repayment. As to the $1,-750first advanced, that was undeniably a loan; and an agreement of the borrower or of a person to whom money is *411 advanced, to repay it out of, or to appropriate a particular fund to pay it, does not absolve him from his personal liability to refund. (Cornwall v. Gould, 4 Pick. 444-7; Sterling v. Rogers, 25 Wend. 658.)
The assignment of a mortgage as collateral security for the payment of a simple contract debt works no merger of the latter. (Day & Penfield v. Leal & Leal, 14 J. R. 404.)
As to the idea, that the assigned bond and mortgage were the primary fund for the repayment of the loan, that the defendant was merely a surety for its repayment, and that the plaintiff did not immediately foreclose the bond and mortgage, it is sufficient to say, that if such was the position of the defendant in this case, the neglect to sooner foreclose is no defence. There is no allegation that any injury was produced by the delay. If a surety, and not injured by the delay, he must pay the deficiency. (Vide Schroeppell v. Shaw, 3 Coms. 446.)
The mortgage was to be foreclosed immediately. It has been foreclosed. It is not averred that it is or was in the power of the plaintiff to do anything in the foreclosure proceedings, which he has not done, that would have produced more than has been realized.
The bill of foreclosure states that Dilceman, the mortgagor, died in October, 1844, and that the whole principal was due, with interest from the 20th of November, 1846.
There is no allegation that Dikeman left any property at the time of his death.' (See 1 R. S. 749, § 4.)
On the contracts signed by the defendant, and the other evidence given, I think it is manifest that the §4,000 advanced by the plaintiff was lent by him; that it was advanced at the request of the defendant, that he acted as principal and on his own behalf in procuring the money, and that he is personally liable to pay the amount in arrear. It certainly does not appear that any part of the money was ever paid to Mrs. Corbett, or to any one by her order, or for her use.
But as a verdict was ordered subject to the opinion of the court at general term, and as it is obvious that all the facts of the case have not been disclosed, and as injustice might possibly be done by ordering a judgment on the verdict, I think it proper, under all the circumstances of the case, that a *412 new trial should be granted on the payment by the defendant of the costs of the trial and of subsequent proceedings.
h£y brethren are of a different opinion, and think the verdict should be set aside and the complaint dismissed.
It seems to me, that unless the agreement of October, 1847, can be construed as an agreement to look solely and exclusively to the proceeds of the mortgage for reimbursement, the most that can properly be done is to grant a new trial. If that is not so clearly its legal import, that no parol evidence of the transaction can be given which would affect the rights tif the parties, it would seem that inasmuch, as the court below held the evidence sufficient to entitle the plaintiff to. recover, he ought not to be now turned out of court absolutely because he did not then give more. If the complaint is to be dismissed, it seems to me it must be upon the ground that no extrinsic proof is inadmissible to vary or explain the legal import of the written contracts; that by their necessary legal import they are not the contracts of the defendant, but of Cathalina Corbett, or if they are his contracts, that by them the plaintiff advanced his money and agreed to look solely and exclusively to the proceeds of the mortgage to obtain the repayment.
[Verdict set aside, and judgment for defendant dismissing complaint with costs.]