## DEXTER *vs.* BROAT.

When a public highway is taken by a plank road company, for the purpose of constructing a plank road on the site thereof, the company succeeds to all the rights of the commissioners of highways in respect to the construction and repairing of such plank road.

And any damage which an individual may sustain by the obstructing of a stream, in consequence of raising the grade of the road, &c. is *damnum absque injuria;* and affords no basis for an action.

A recovery, in a former suit, brought against another person, for the same cause of action involved in the second suit, and the payment and satisfaction of the judgment, is a bar to the second suit.

And if the amount of the judgment previously recovered, is tendered to the plaintiff, he has no right to refuse to receive the money, and to bring an action for the same cause, against another person, on the ground that he has a right to elect *de melioribus damnis.*

Payment of a judgment, to the *justice* before whom the same was recovered, in good faith, and without any dissent, or directions to the contrary, by the plaintiff, is a satisfaction of the judgment.

THIS action was commenced before a justice of the peace, on the 30th day of April, 1851; and tried by a jury on the 9th day of June, 1851. The jury found a verdict in favor of the plaintiff, for $25, and the justice entered a judgment on the same for $25 damages, and $5 costs. The defendant appealed to the county court, of Herkimer county, where the judgment was affirmed. The defendant then appealed to this court, from the judgment of affirmance. The complaint alleged that in the year 1850, the defendant entered the plaintiff's close, dug up the soil, &c. and

drew thereon a large quantity of dirt, thereby causing an ob-struction in a stream of water, whereby the plaintiff lost his barn, hay, &c.   The complaint further alleged that the defendant built a plank road in the highway, on the plaintiff's premises, in such manner as to dam up and turn a stream of water from its former course, whereby the plaintiff lost his barn, &c.; also, that the defendant entered upon and used the bridge and door-yard of the plaintiff, and claimed damages to the amount of $100.   The answer denied specifically each allegation of the complaint, and alleged that the defendant acted as the agent of the Salisbury and Manheim Plank Road Company, in constructing its plank road in front of the house occupied by the plaintiff; that said company was duly organized under the act of 1847 ; that it had acquired the right to take and use the highway, mentioned in the complaint ; and that the acts of the defendant were proper and necessary to construct such road, and were done in a careful and workmanlike manner.   The answer also set up a former re-covery by the defendant against the company before a justice, for the same causes of action, in bar of this action, and the pay-ment of such former judgment.   The answer further alleged that the place where the trespasses were alleged to have been com-mitted was a part of the public highway.

On the trial it appeared that prior to 1850, and thence to the time of trial the plaintiff was in possession of about an acre of land, bounded easterly by an ancient highway ; that there is a stream of water running from the northwest, crossing these premises and said highway; that the plaintiff's dwelling was situate north of the stream ; that prior to 1850, the plaintiff had removed his barn and placed it directly over the stream, so that it passed under the barn and thence across the highway ; that the Salisbury and Manheim Plank Road Company, was duly in-corporated, and in 1850 proceeded to construct its plank road on the site of the highway along the plaintiff's premises ; that the defendant acted as the agent of the plank road company, in constructing its road on the site of the highway along the plaintiff's premises in the spring of 1850 ; that the grade of the plank road each side of the bridge was raised from a foot to fifteen

inches, and this was necessary and proper to make the road; that in the summer of 1850, there was a flood by which the plaintiff's barn was moved. The defendant proved a former recovery by the plaintiff against the plank road company, before a justice of the peace, for the same cause of action, and the payment of such judgment to the justice before this suit was commenced. The justice before whom the former suit was brought, testified that such suit was commenced on the 11th of February, 1851; the judgment entered March 28th, 1851, and was fully paid by Thomas Burch as treasurer of said company, on the 5th of April, 1851. The defendant objected to the plaintiff's proving by this witness that he received a letter from the plaintiff, stating he did not want an execution issued; on the ground that the letter itself should be produced. The court overruled the objection, and the defendant's counsel excepted. The witness testified that he did receive such a letter; the plaintiff had received no part of the money paid on the judgment; that the letter was not received until after the judgment was paid.

The plaintiff recovered in this suit $25 and costs.

*F. Kernan*, for the appellant.

*A. H. Waterman*, for the respondent.

*By the Court*, Gridley, J. We do not perceive any evidence, on which the jury were authorized to find a verdict against the defendant, provided he had been working under the directions of the commissioners of highways, instead of the plank road company. It was held in *Benedict v. Goit*, (3 *Barb. Sup. C. Rep.* 469,) that the plank road company were in the place of the commissioners, in their right to repair and construct a plank road on the site of a public highway. And in *Graves v. Otis*, (2 *Hill*, 466,) it was decided that no action lay for cutting down an eminence in a public street and sidewalk in the village of Watertown, by which the plaintiff's store was left six or eight feet above the level of the sidewalk adjacent to the premises. The injury in such a case was *damnum absque*

Dexter *v.* Broat.

*injuria.* The principle of the case of *Benedict* v. *Goit*, has been several times confirmed by the courts of this state, and by the supreme court of Massachusetts, in the case of *Babcock* v. *The Western Railroad Corporation*, (9 *Metcalf*, 553.)

It is, however, unnecessary to rest the case on this ground, because there is another defense that we regard as conclusive: A judgment had been recovered on the 28th day of March, 1851, by the same plaintiff against the plank road company, of which the defendant in this suit was the agent, for an injury which was admitted by the counsel to constitute the same cause of action with that in this suit; and that judgment was paid to the justice before the commencement of this suit. No dissent was proved, by any legal evidence, and no directions not to receive the amount of the judgment had been given by the plaintiff, when the justice received the amount of the judgment. The question then arises as to the power of the justice to receive the money, and the effect of so receiving it. I deny the right of the plaintiff to refuse to receive the money, and to maintain this action on the ground that he has a right to elect " *de melioribus damnis.*" A tender to an agent, clerk or servant authorized to receive money, is as valid as a tender to the principal. (20 *Wend.* 436. 1 *Camp.* 478. 5 *Taunt.* 307. 1 *Esp. Rep.* 350.) And a tender is good, to an attorney with whom a demand has been left for collection. (18 *John.* 110.) A justice is authorized to issue execution on a judgment without any express direction from the plaintiff. The language of the act is " upon any judgment being rendered before a justice he *shall issue execution as hereinafter provided.*" And the statute then enacts that he shall issue an execution in some cases in 30, in others in 90 days, and in other cases immediately. (2 *R. S.* 175, § 130.) Again, a defendant has a right to *tender the amount of the judgment*, and relieve himself from the judgment, and to prevent the issuing of an execution, as soon as it is recovered. To whom shall he make the tender? The plaintiff does not know the amount of the costs, and may not know, or remember, the amount of the damages; and the defendant *must* of necessity tender and pay to the *justice*. Should he make the

Dexter *v.* Broat.

tender to the party himself, the plaintiff would refer him to the justice, just as a party would refer a defendant to his attorney who had the demand in charge. The fact that the justice has a right to issue *execution* and the constable is bound to return it to *him*, is also conclusive as to the right of the justice to receive the amount of the judgment in satisfaction. I say nothing of a case where, when the judgment is rendered, the plaintiff gives notice to the defendant, and to the justice, that he intends to bring another suit against other parties, and to take his election of the damages; for the reason that it is not necessary to decide upon the effect of such a notice. But, the money was paid in this case by the defendant and was received by the justice, in perfect good faith, and in utter ignorance of any design to bring another suit against the present defendant or any other party.

Again; the receipt of parol evidence of the contents of the plaintiff's letter, against the objection of the defendant, without proof of its loss or destruction, was error. Without that evidence, the case is destitute of any evidence at all that the plaintiff ever dissented to the receipt of the money, or manifested the least disapprobation of the act of payment. Now the jury *may* have held the dissent contained in that letter as operative to prevent the payment being a satisfaction of the judgment; though the letter was written and received after the payment was made. It is quite difficult to perceive how they could have found a verdict, on any other principle. For without that letter there was, in proof, a payment of the judgment to the justice in the ordinary way; and that without any dissent on the part of the plaintiff; which was clearly a satisfaction of the judgment.

Judgment reversed.

[Jefferson General Term, July 4, 1853. *Gridley, W. F. Allen, Hubbard* and *Pratt,* Justices.]