WILLIAM W. BROWN, Respondent, v. MURRAY HALL, Appellant.

(GENERAL TERM, THIRD DEPARTMENT, FEBRUARY, 1871.)

The defendant agreed to sell ten cows at fifty dollars each, with right on their delivery to two more at seventy-five dollars each, and the purchaser paid earnest money. Before they separated it was understood between the parties that the two cows should be counted in the contract; no writing passed. The purchaser told the plaintiff he might take the two cows upon the contract terms, and the vendee consented to accept the plaintiff as his debtor and gave him credit as a substitute for the purchaser, and also agreed to keep the cows for him for hire. The ten cows were paid for and delivered according to the contract, and the earnest was applied as part of their price. In an action for the value of the two cows after defendant's refusal to deliver them on demand; held, that the plaintiff was entitled to recover.

A contract for purchase of property, at the option of the purchaser, when money is paid on it, is valid and binding on the parties, although not in writing. (Per MILLER, P. J.)

Application of the earnest money to the payment for the ten cows, could not affect the validity of the original contract. (Id.)

And it seems, that by the contract between the plaintiff and defendant for keeping the two cows, there was a delivery to the plaintiff, and the possession of the defendant became that of the plaintiff's bailee. (Id.)

Nor could the defendant object that the agreement between the defendant's purchaser and the plaintiff was void by the statute of frauds. (Id.)

THE action was brought in a justices' court. The complaint alleged that, on or about the first day of March, 1866, the plaintiff was the owner of two cows, worth $200; that he hired the defendant to keep said cows for him at Preston for six shillings per week; that the defendant, on demand, refused to deliver said cows to plaintiff, "whereby the defend-

ant became liable to pay plaintiff $200, the value of said cows, the plaintiff hereby expressly waiving said tort and claiming for the value of said cows." There was a further allegation, viz.: "this plaintiff further complaining, says that he is indebted to the defendant for the price of two cows, $150, and for keeping of same $1.50, which is a legal offset to plaintiff's claim. Plaintiff claims judgment for the balance, to wit, forty-nine dollars and costs."

The answer denied each and every allegation. It appeared upon the trial that in January, 1866, the defendant was owner of thirteen cows, ten of which he offered to sell for $500. The plaintiff went with one Kinney to buy them on a Sunday. The cows were in two barns, and the parties and Kinney looked them over. While looking them over, Kinney said if he bought he could not take the cows until the following Thursday, and it was agreed that, if Kinney bought, Hall should keep the cows until Thursday. There was testimony to show that during the negotiation Kinney tried to buy, with the ten, two of the three remaining cows. Hall said he would put those in for seventy-five dollars each, and refused to call them seventy dollars each. Kinney asked him if he could have the refusal of them at seventy-five dollars each until the next Thursday; Hall said he could, and Kinney told Hall he would take the ten, and the other two if he should so decide, by Thursday, and on this bargain he paid twenty dollars. The parties and Kinney, after a little more conversation, went out of the barn, and while Hall was closing the door, Kinney turned to Hall and said, "you may count those two cows in; we will take them;" and Hall said, "very well," and they separated. After they separated, Kinney sold the two cows to the plaintiff, on the plaintiff's agreeing to pay to Hall what they cost, i. e., $150. This was by parol.

On Monday Brown called on Hall, and informed him that he had bought the cows of Kinney, and Hall agreed to trust him, Brown, for the $150 until the first of April, unless Hall sooner "bought a place," and, in that case, Brown was to pay on notice.

Brown *v.* Hall.

On Thursday Kinney also told Hall of his sale to Brown, and Hall agreed with him to take Brown as debtor for $150; and Kinney paid the remaining $480, and Hall fully assented to Kinney's sale to Brown. On that Thursday, Kinney and Brown contracted with Hall to keep the cows a few days at seventy-five cents per head a week, but with the express condition that Hall should risk them.

On the following Monday, Kinney and Brown went to Hall's, and Kinney drove away the ten cows, and paid for their keeping, and Brown agreed to be responsible to Hall for the keeping of the two; and Brown contracted with Hall to further feed the two for him for a few weeks at seventy-five cents each per week, and Hall so fed them.

A misunderstanding arose as to when Brown was to pay for the cows, and the defendant refused to give them up on demand.

There was some conflict in the testimony upon the questions of fact in the case. The defendant moved for a non-suit on grounds stated and discussed in the opinion, and the motion was denied. The jury found in favor of the plaintiff for forty-six dollars and costs.

The defendant appealed to the County Court of Chenango county. The judgment was affirmed, and the defendant appealed to the General Term of the Supreme Court.

*E. H. Prindle,* for appellant and defendant.

*Isaac S. Newton,* for respondent and plaintiff.

Present—MILLER, P. J.; POTTER and PARKER, JJ.

By the Court—MILLER, P. J. The contract for the sale of the cows included ten cows at fifty dollars a piece, and two cows at seventy-five dollars a piece. The defendant first agreed to sell the ten cows, and after this the purchaser asked the price of the other two cows, and the price was

given, in case the purchaser wanted them when he came after the others the next Thursday. After this the twenty dollars was paid on the contract to the defendant, and before the defendant left it was agreed that the two cows should be counted in. When the money was paid, the contract was, as testified to by plaintiff's witnesses, that the defendant sold ten cows, with the right to take two more. As found by the verdict of the jury, the contract was an entirety, and the first question to be considered is whether the condition attached to the purchase of the two cows, before the money was paid, although ratified before the parties separated, rendered the contract void by the statute of frauds. (2 R. S., 136, § 3.)

I am inclined to think that the contract was valid for the purchase of the two cows. There is no good reason, in my opinion, why a contract for the purchase of property at the option of the purchaser, whose money is paid upon it, is not valid and binding upon the parties. There is no want of mutuality in such a contract. The vendor receives the money and the vendee pays it in consideration of the sale, and it cannot therefore be urged that there is no consideration for such an agreement. In *Mills* v. *Hunt* (20 Wend., 431), it was held that where goods are purchased in several parcels, to be paid for at a future day, the whole constitutes one contract, and a delivery of some of the parcels is sufficient to take the case, as to the residue, out of the operation of the statute of frauds. It was said in that case, that the case would be different where the purchaser paid for and took a delivery of some of the separate articles only, leaving the residue. undelivered; or where several articles were purchased at the same time, to be paid for on delivery, and the purchaser afterward received and paid for some of the separate articles only. Such is not this case, for money was paid in advance to bind the contract and to take it out of the statute. Nor is there any analogy between the case at bar and one where distinct terms attach to the bargain for different articles, though bought at the same time, and the acceptance of one article is

not the acceptance of another, as in *Price* v. *Lee* (1 B. & Cr., 156 ; 8 E. C. L. R., 48), cited in Smith on Contracts, 3 Am. ed., 157.) The contract here was entire, and a payment was made as to the whole, and not on a part of it. The fact that the payment was afterward applied on the ten cows does not, in my opinion, change the aspect of the case. It is enough that the money was paid on the whole contract and the statute thus satisfied. This rendered it valid in all its parts, and the application of the money afterward does not render a valid contract void. Suppose the money paid had been applied upon one cow alone, it can scarcely be claimed that the contract was void as to the remainder. The contract was made valid, I think, as to the twelve cows by the payment of the money, and independently of the agreement, made about the same time and after the payment, to count the two cows in the contract.

There is another ground, also, upon which, I think, that the contract was valid. A few days after the sale the defendant made a contract with the plaintiff to keep the cows for him. He had also agreed with him to take him as his debtor in the place of the purchaser, Kinney, having received of Kinney the sum of $480 in cash, besides the twenty dollars originally paid. Here was a payment of all but the $150, and a delivery of the two cows by the agreement to keep them. The general rule is, that a delivery and acceptance may be accomplished as to ponderous and bulky articles by the performance of any *act* which shows that the seller has parted with the right and claim to control the property, and that the purchaser has acquired that right. (Brown on Frauds, § 318.) In *Vincent* v. *Germond* (11 Johns., 283) it was held, that when on a sale of cattle no earnest money was paid and the cattle left until called for, and the vendee afterward came and took the cattle without saying anything to the vendor, the delivery was complete within the statute of frauds. · In the opinion of the court the case of *Elmore* v. *Stone* (1 Taunt. Rep., 457) is cited, where it was held that an agreement between the parties that the vendor should keep the horses

sold for the vendee at livery, was sufficient to vest the property in the buyer, without any written contract or earnest paid. The authority of this case has been doubted. (See 1 Coms., 268.) But in *Bissell* v. *Balcom* (39 N. Y., 275) it is cited, as well as the case of *Martin* v. *Wallace* (37 Eng. L. & Eq., 6), which is similar in some of its leading features to *Elmore* v. *Stone*. The point now discussed was not decided in *Bissell* v. *Balcom*, as the case went off on another ground.

I am strongly inclined to think that, by the contract between the plaintiff and the defendant, Hall became Brown's bailee, and his possession was Brown's possession. Inasmuch, however, as the contract was valid by the payment of the money, as I have already indicated, it is not necessary to pursue the investigation of this branch of the case any further.

It is said that the alleged sale of the cows by Kinney to the plaintiff was also void by the statute of frauds. As the defendant was not privy to that sale, I think he is not, in a position to raise the question, even if the contract was invalid. An usurious contract cannot be avoided by a mere stranger to the transaction, but only by a party who made it, or some one standing in legal privity with him. (*Dix* v. *Van Wyck*, 2 Hill, 522 ; *Draper* v. *Trescott*, 29 Barb., 401 ; *Shufelt* v. *Shufelt*, 9 Paige, 145.) The same principle appears to be applicable to a case like the present one. But even if the defendant was at any time in a position to urge this objection, I think that he has waived his right to do so by agreeing to accept the plaintiff, in the place of Kinney, for the payment of the amount agreed upon as the price of the cows. He has, thereby, made a new contract with the plaintiff, which is binding if the original contract is lawful. Certainly, if the defendant was a bailee of the goods, he cannot set up as a defence that the bailor was not the owner. (*Gerber* v. *Monie*, 56 Barb., 659.)

If there is any force in the point taken, that the plaintiff could not waive the alleged tort and recover upon an implied contract for property sold, as the whole evidence is out, I think the objection can be obviated by conforming the pleadings to

the proof under the liberal rules of pleading adopted since the Code of Procedure has been in operation. (*Bigelow* v. *Dunn*, 36 How., 120.) In furtherance of justice, the court may direct an amendment of the pleading before or after judgment, or on appeal, or treat the same as amended, or allow it to be amended *nunc pro tunc* to sustain the verdict. (36 Barb., 27, 29 ; 40 Barb., 235, 242 ; 18 N. Y., 521 ; 21 N. Y., 305.)

Some other points are made by the defendant's counsel, but they are not well founded.

The judgment of the County Court must be affirmed with costs.

POTTER, J., concurred in the result of the foregoing opinion

PARKER, J., dissented.

Judgment affirmed.