STEPHEN P. LUNT *et al.*

*v.*

JOHN H. WRENN.

*Filed at Ottawa February 7, 1885.*

1. LIMITATION—*action for recovery of money paid on a consideration which fails entirely.* In 1868, bankers in Nebraska ordered from the plaintiffs' private bankers in this State, twelve pieces of land scrip for location on public lands of the United States, when plaintiffs applied to and bought of defendants, also private bankers, the desired amount of scrip, which was located. After such locations, and when the scrip was forwarded to the general land office, six pieces of the scrip were declared counterfeit and worthless, and the land officers refused to issue patents for the lands upon which they had been located, and vacated the locations. In May, 1875, the bankers first named sued the plaintiffs, and recovered judgment for the sum paid for the worthless scrip, and interest. The plaintiff immediately, upon being sued, notified the defendants of that fact, and asked them to defend the suit, which they failed to do. In 1878, the plaintiffs sued the defendants to recover the sum they had been compelled to pay, in defence of which action the Statute of Limitations was pleaded. It was stipulated that plaintiffs had notice that such scrip was counterfeit and worthless, prior to January 8, 1872: *Held,* that the action was barred by the statute, whether the action was to recover for a breach of the implied warranty of title, or for a total failure of the consideration of the payment.

2. MEASURE OF DAMAGES—*suit by buyer against seller, for failure of title.* Where the seller of public land scrip has knowledge that the same has proved counterfeit and worthless, he will not be justified in defending a suit against him, by one to whom he sold, and failing to pay until a judgment is rendered against him; and if he does, he can not recover the costs thereby occasioned, of his vendor, in an action against him. Costs unnecessarily made by a purchaser in defending the title of the property purchased, are not chargeable against his vendor.

3. ACTION—*to recover for money paid for counterfeit land scrip—whether a return or offer to return the scrip is necessary.* The purchaser of land scrip which proves to be counterfeit and worthless, is not required to return or offer to return the same to the seller, before he can maintain an action to recover back the price paid for the same. The rule is different in respect to counterfeit bank bills. There a return is necessary, to enable the payer to trace out and fall back upon the person from whom he received them.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

This was an action of assumpsit, by appellants, against appellee and Trefer & Ullman. The declaration contained two special counts, to which appellee pleaded, first, the general issue; and second, the Statute of Limitations,—that the suit was not brought within five years after the cause of action accrued. Replication was filed, taking issue upon the plea of the statute.

The following are stipulated to be the facts: In April, 1868, McCann & Smith, private bankers in Nebraska, ordered from the plaintiffs twelve pieces of "Agricultural College scrip," so-called, being in the nature of warrants for the location, on public lands of the United States, of each of such pieces of scrip, to the extent of one hundred and sixty acres, and in pursuance of such order the plaintiffs applied to the defendants for the scrip to fill such order, and the defendants, who were then private bankers, offered to sell to the plaintiffs, who were also private bankers, such scrip, at the rate of $160 for each piece of scrip authorizing its location on one hundred and sixty acres of public land, which offer the plaintiffs accepted. Thereupon the defendants delivered to the plaintiffs twelve pieces of such scrip, purporting to have been issued by the United States to the State of Massachusetts, and authorizing the holders to locate each of such certificates or pieces of scrip on one hundred and sixty acres of the public unseated lands of the United States, for which the plaintiffs paid the defendants the sum of $1920, and immediately sent the same to said McCann & Smith, in compliance with their order, who by return mail remitted to the plaintiffs such cost of said scrip. Subsequently said McCann & Smith assigned said twelve pieces of scrip to one Walker, who located the same on public lands of the United States, in Nebraska.

After such locations, and when the said scrip, with duplicate receipts showing the locations, were forwarded to the general land office at Washington, to procure patents, the commissioner of the general land office at Washington pronounced six of said pieces of scrip counterfeit and worthless, and vacated and set aside the locations thereunder, and refused to issue patents for the lands upon which the same had been located, whereupon the said Walker sued the said McCann & Smith, in a Federal court in Nebraska, for the money paid for such counterfeit scrip, and recovered a judgment for that amount, with interest and costs, against the said McCann & Smith, which they paid and satisfied. Afterwards, at the May term, 1875, the said McCann, who had succeeded to the rights of said McCann & Smith, brought a suit in the United States Circuit Court for the Northern District of Illinois, against the plaintiffs, to recover from them the amount paid for said six pieces of counterfeit scrip, and interest on the amount paid them therefor, and the expenses to which he had been subjected in the said suit of the said Walker, and immediately after the institution of such suit the plaintiffs in this suit gave the defendants in this suit notice of the pendency thereof, and to assist in the defence of the same, and that they (the plaintiffs in this suit) would look to the defendants in this suit for indemnity against all loss in case the said McCann should recover a judgment in his said suit. The defendants in this suit disregarded such notice, and took no part in the defence of said suit of McCann against the plaintiffs in this suit. Upon the trial of the said suit of McCann, in the Federal court for the Northern District of Illinois, evidence was offered by the defendants under their several pleas, among which was a plea of the Statute of Limitations, but the plaintiff, McCann, proved that the said six pieces of scrip, held by the commissioner of the general land office to be void, as above stated, were in fact counterfeit and void; and on the 6th day of March, 1878, after the trial of

such cause, the said Federal court for the Northern District of Illinois rendered a judgment in favor of said McCann, and against the plaintiffs in this suit, for the sum of $2025.84, besides the costs of such suit, and immediately after the rendition of such judgment, the defendants therein (the plaintiffs in this suit) paid the same in full to the said McCann. The items composing the said judgment for $2025.84 of damages, were as follows:

| | |
|---|---:|
| Original cost of six pieces of scrip, - - - | $960.00 |
| Interest on amount paid therefor, - - - - | 555.36 |
| Costs taxed in suit in Nebraska, - - - | 192.86 |
| Paid attorneys' fees in Nebraska suit, - - - | 285.00 |
| | $1993.22 |
| Additional interest on costs in Nebraska suit, - | 32.62 |
| | $2025.84 |

It was further stipulated that the plaintiffs in this suit had notice that the scrip above mentioned as having been purchased by plaintiffs from defendants, was counterfeit and worthless, prior to the 8th day of January, 1872.

On the trial of the said cause, the following proceedings were had:

"This cause came on to be tried, on this day, by the court, without a jury, a jury having been waived, and thereupon, the counsel for the plaintiffs confessing in open court the plea of bankruptcy and discharge pleaded by the defendant James E. Tyler, the issue on that plea is found in favor of said James E. Tyler, and judgment in his favor ordered accordingly; and thereupon counsel for the plaintiffs, and for the said defendant John H. Wrenn, submitted to the court a stipulation, in writing, signed by them, respectively, of all the facts in the case, to be received by the court as evidence, and the court here, thereupon, finds the facts in the case to be as stipulated by the parties in the above stipulation. And there-

upon the counsel for the plaintiffs submitted to the court, in writing, the following propositions of law upon the facts so stipulated and found, to be held as law in the decision of the issues in this case between the plaintiffs, and the defendant John H. Wrenn, to-wit:

"*First*—The plaintiffs are entitled to recover against said defendant their said damages by occasion of the premises, unless their action therefor was barred by the Statute of Limitations when they commenced this suit,—which proposition of law the said court here holds and finds as asked.

"*Second*—Upon the facts as stipulated and found by the court, the plaintiffs' action to recover their damages, sustained by reason of the premises, was not barred by the Statute of Limitations when this suit was commenced, and the plaintiffs are entitled to recover their damages against the defendant,—which proposition of law the court here refuses, and finds, as matter of law upon the facts so stipulated and found, that the plaintiffs' action to recover their said damages was barred by the Statute of Limitations when this suit was commenced, and therefore finds the issue on the plea of the Statute of Limitations for the said defendant Wrenn, and orders judgment accordingly. To which last refusal and finding by the court the counsel for the plaintiffs, in due form of law, excepted, whereupon it was ordered and considered by the court that the defendant Wrenn go hence, without day, and recover of said plaintiffs his costs in and on his behalf expended, to be taxed and have execution therefor."

Messrs. SLEEPER & WHITON, for the appellants:

When the firm of which appellee was a member, sold the scrip to appellants which proved counterfeit, the sale was accompanied by an implied warranty that the scrip was genuine. Benjamin on Sales, secs. 607, 608 ; *Hurd* v. *Hall,* 12 Wis. 135.

In *Ripley* v. *Wither,* 27 Texas, 14, it was held that an action for damages growing out of the assignment of a forged bounty

warrant, did not accrue until after the certificate had been presented to and rejected by the court of claims.   In *Hutchinson* v. *Sheboygan County,* 26 Wis. 402, it was held that the Statute of Limitations did not run, on a claim of a grantee in an invalid tax deed to have his purchase money refunded, under the laws of that State, until such grantee had clear and positive knowledge that the deed was invalid.   So if a surety pays the debt of his principal, the statute begins to run from the time of actual payment, and not from the time he became liable, or from the time when suit is brought to enforce payment.   *Thayer* v. *Daniels,* 110 Mass. 375; *Benton* v. *Rutherford,* 49 Mo. 255; *Rodman* v. *Hedden,* 10 Wend. 500; *Reeves* v. *Pulliam,* 7 Bax. 119; *Barnesback* v. *Reiner,* 8 Minn. 59; *Norton* v. *Hale,* 41 Vt. 471; *Walker* v. *Lathrup,* 6 Iowa, 516; *Church* v. *Moore,* 10 Pa. St. 273.

The rule is the same in compelling contribution among sureties.   *Singleton* v. *Townsend,* 45 Mo. 379.

A cause of action against an officer for not paying money collected on execution, does not accrue when the money is collected, nor until demand is made for its payment.   *State* v. *Miner,* 44 Mo. 373; *Bank* v. *Waterman,* 26 Conn. 324; *Weston* v. *Ames,* 10 Metc. 244; *Governor* v. *Stonaur,* 11 Ala. 679; *Rice* v. *Hosmer,* 12 Mass. 127; *King* v. *Rice,* 12 Cush. 161; *Childs* v. *Jordan,* 106 Mass. 321; *Lynch* v. *Jennings,* 43 Ind. 276.

If money is left on deposit, and not loaned for a definite time, the statute will not run till a demand.   *Payne* v. *Gardiner,* 29 N. Y. 146; *Sullivan* v. *Fosdick,* 10 Hun, 173; *Hamell* v. *Adams,* 68 N. Y. 314; *Brown* v. *McElroy,* 52 Ind. 404; *Beam* v. *Adkins,* 77 Ill. 263; *Bank* v. *Bank,* 39 Pa. St. 92; *Brummegin* v. *Tallant,* 29 Cal. 503; *Tripp* v. *Curtenius,* 36 Mich. 494; *Bank* v. *Benoist,* 10 Mo. 519; *Bank* v. *Bank,* 10 G. & J. (Md.) 422; *Bank* v. *Wister,* 2 Pet. 318.

Where money is paid upon a consideration that ultimately fails, the statute does not run till such event, because till

then there is no right of recovery. *Richards* v. *Allen,* 17 Maine, 296; *Eames* v. *Savage,* 14 Mass. 425; *Taylor* v. *Rowland,* 26 Texas, 293; *Hall* v. *Fenton,* 105 Mass. 516; *Baxter* v. *Gay,* 14 Conn. 119; *Hellan* v. *Duncan,* 1 Cold. (Tenn.) 313; *Coppinger* v. *Vaden,* 5 Humph. 629; *Harris* v. *Harris,* 70 Pa. St. 170; *Gross* v. *Kierski,* 41 Cal. 111; *Collins* v. *Thayer,* 74 Ill. 138.

The statute begins to run in favor of sureties on executors' bonds from the time of the judicial ascertainment of the principal's liability. *Bennor* v. *Young,* 68 Ala. 35; *Alexander* v. *Bayan,* 110 U. S. 414; *Newton* v. *Hammond,* 38 Ohio St. 430.

Messrs. J. P. & T. R. WILSON, for the appellee:

The time limited is to be computed from the time at which the creditor has a cause of action, or at the date when he might first have brought suit upon his claim.

When a person pays money for a bill, bank note, bill of exchange, etc., which proves to have been forged, he may recover it back as paid on a consideration which has wholly failed. Chitty on Contracts, 931; Byles on Bills, 333; *Jones* v. *Ryde,* 5 Taunt. 488; *Young* v. *Cole,* 3 Bing. (N. C.) 724; *Westrop* v. *Solomon,* 8 C. B. 345; *Gompertz* v. *Bartlett,* 2 E. & B. 849; *Tyler* v. *Bailey,* 71 Ill. 34; Benjamin on Sales, secs. 607, 608.

As soon as a vendor has sold a certificate or scrip which proves counterfeit, and got the money therefor, on that instant a right of action accrues to the purchaser. *Westrop* v. *Solomon,* 8 C. B. 345; *Farlin* v. *Stone,* 12 R. I. 437; *Bishop* v. *Little,* 3 Greenlf. 405; *Scott* v. *Scott's Executors,* 2 Marsh. (Ky.) 217; *Chancellor* v. *Wiggins,* 4 B. Mon. 201; *Terry* v. *Bissell,* 26 Conn. 23.

The cause of action, here, was not upon a warranty, but upon a want or failure of consideration for the money paid for the scrip. In addition to the above authorities, see *Wilkinson* v. *Johnson,* 3 B. & C. 428; *Gurney* v. *Womershy,* 92

E. & L. 133; *Kempson* v. *Saunders,* 12 Moore, 44; Addison on Contracts, *1000, 1183; 2 Parsons on Notes and Bills, 40; *Aldrich* v. *Jackson,* 5 R. I. 218; *Canal Bank* v. *Bank of Albany,* 1 Hill, 287; *Webb* v. *Odell,* 49 N. Y. 583.; *Tyler* v. *Bailey,* 71 Ill. 34; *Murray* v. *Judah,* 6 Cow. 491; *Wilcox* v. *Plummer,* 4 Pet. 172.

There need be no return of the forged scrip in such a case. *Paul* v. *City of Kenosha,* 22 Wis. 270.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

It would seem to be more accurate, in this class of cases, to say that the right of recovery is for the purchase money, because of the failure of the consideration upon which it was paid, than to say that it is for the breach of an implied warranty that the article is that which was professed to be sold. That which was delivered by the seller to the buyer was not that which was sold, but only a worthless counterfeit resemblance of it. The seller has got the buyer's money, and the buyer has received nothing from him for it. It is not the case of a failure of title, but one of the non-existence of the subject matter of the sale.

The distinction pointed out by Lord ABINGER, in *Chambs* v. *Hopkins,* 4 Mees. & Wel. 399, has been generally approved, and seems to be sufficiently accurate. He said: "A good deal of confusion has arisen from the unfortunate use made of the word 'warranty.' Two things have been confounded together. A warranty is an express or implied statement of something which the party undertakes shall be part of a contract, and though part of the contract, yet collateral to the express object of it. But in many of the cases, some of which have been referred to, the circumstance of a party selling a particular thing by its proper description has been called a warranty, and a breach of such a contract a breach of warranty; but it would be better to distinguish such cases as a

non-compliance with a contract which a party has engaged to fulfill, as, if a man offer to buy *peas* of another, and he sends him *beans*, he does not perform his contract, but that is not a warranty. There is no *warranty* that he should sell him peas. The contract is to sell peas, and if he sells him anything else in their stead, it is a non-compliance of it." Benjamin, in his work on Sales, (1st Am. ed.) p. 443, after copying this quotation, observes: "There can be no doubt of the correctness of the distinction here pointed out. If the sale is of a described article, the tender of an article answering the description is a condition precedent to the purchaser's liability, and if this condition be not performed, the purchaser is entitled to reject the article, or, if he has paid for it, to recover the price as money had and received for his use; whereas, in case of warranty, the rules are very different." He then adds that there is no controversy as to this principle, and as illustrative, cites and quotes from a number of modern English cases, after which he says: "Under this head may also properly be included the class of cases in which it has been held that the vendor who sells bills of exchange, notes, shares, certificates, and other securities, is bound, not by the collateral contract of warranty, but by the principal contract itself, to deliver, as a condition precedent, that which is genuine,—not that which is false, counterfeit, or not marketable, by the name or denomination used in describing it." And he cites, in support of this, *Jones* v. *Ryde*, 5 Taunt. 488; *Young* v. *Cole*, 3 Bing. (N. C.) 724; *Westrop* v. *Solomon*, 8 C. B. 345; *Gompertz* v. *Bartlett*, 2 E. & B. 849; 23 L. J. (Q. B.) 65,—and the cases cited fully sustain his language. To like effect, see, also, 1 Smith's Lead. Cases, (7th Am. ed.) 325; 2 Schouler on Personal Prop. 320; Chitty on Contracts, (11th Am. ed.) 931; Story on Sales, (2d ed.) secs. 147, 148, 377; Biddle's Warranties on the Sale of Chattels, sec. 89; *Smith* v. *McNair*, 19 Kan. 330; *Paul* v. *City of Kenosha*, 22 Wis. 266; *Webb* v. *Odell*, 49 N. Y. 583. It is true, this court, in *Tyler* v. *Bailey*,

71 Ill. 34, without alluding to the distinction between a breach of an implied warranty and the non-performance of a condition of sale, speak of an implied warranty of the genuineness of the thing sold; but at the same time, it will be observed, it is held that the right of recovery in the case of a contract to sell land warrants, and the delivery of counterfeits in their stead, is of the money paid by the buyer, on the ground of failure of consideration.

If the right to recover is upon the ground of failure of consideration, it is quite evident that the Statute of Limitations is a complete defence, since, in that event, it began to run from the date of the transaction, for the condition of the scrip was then precisely what it is now,—counterfeit and worthless,—and the evidence discloses no circumstance whereby, in any contingency, legitimate profit could be derived from its possession, either then or prospectively. And if we shall concede that the liability to recover is upon the ground of an implied warranty of genuineness, we think it is equally clear that the Statute of Limitations, on the facts admitted in this record, is a complete defence. The implied warranty, if it existed, was broken *eo instanti* it was made. (*Blethen* v. *Lovering,* 58 Maine, 457.) The scrip was then counterfeit, and a nullity. There was nothing of title or value that passed by the change of its possession, and no future contingency could possibly affect its legal character. In this the case is essentially different from the class of cases wherein some courts have held that a warranty of title to personal property, where the property has been delivered, is not broken until the purchaser is dispossessed. Those cases proceed upon the theory that until dispossessed, the purchaser has all that he bought, and his possession, alone, may ultimately become sufficient evidence of title. There was no necessity to return, or to offer to return, the scrip, because it could be of no possible value to the owner. (*Paul* v. *City of Kenosha,* and *Smith* v. *McNair, supra.*) The reason why it is held, where payments

12—113 ILL.

have been made in counterfeit bills, the bills must be returned within a reasonable time to authorize the payee to recover from the payer, is to enable the payer to trace out and fall back upon the person from whom he received them. (*Simmons* v. *Clark*, 11 Ill. 137; *Magee* v. *Carmack*, 13 id. 289; *Bank* v. *Baldenwick*, 45 id. 375.) But this can have no application to the present case, for this scrip can be traced back to its original holder as well without as with its possession.

We can perceive no reason why appellants should have waited until prosecuted successfully by their vendees on account of a subsequent sale by them of the same scrip. The only effect of such an action was to judicially establish the fact that the scrip was counterfeit, and if that fact was known before, appellants were not justified in defending the suit, and they could not charge appellee with the costs occasioned thereby, for, in that event, the suit was unnecessarily resisted, and costs are not chargeable against the vendor in such cases. Sedgwick on Measure of Damages, (2d ed.) 292; Chitty on Contracts, (11th Am. ed.) 658; *Wrightup* v. *Chamberlain*, 7 Scott, 598. See, also, *Penley* v. *Watts*, 7 Mees. & Wel. 609.

It is here stipulated that "the plaintiffs in this suit had notice that the scrip above mentioned" (*i. e.*, the scrip on account of the sale of which the suit is brought,) "as having been purchased by plaintiffs from defendants, was counterfeit and worthless, prior to the 8th day of January, 1872,"—and this was long before the trial of the suit in which appellants' vendees were plaintiffs, and appellants were defendants, and more than five years before the bringing of the present suit. The admission of notice was not, as counsel for appellants insist, simply from "common rumor and suspicion," but that the plaintiffs had notice of the fact. No mitigating or qualifying circumstance is inserted in the stipulation,—and thus the case is entirely different from *Ripley* v. *Wither*, 27 Texas, 14, cited by counsel for appellants. The admission of notice in this general, unqualified language, is equivalent to an ad-

mission of knowledge of the facts as they existed.   2 Bouvier's
Law Dic. (15th ed.) 307; 1 Story's Eq. Jur. sec. 399.   See,
also, Wade on Notice, sec. 3, *et seq.*

*Merchants' National Bank* v. *First National Bank*, 4 Hughes,
9, (3 Fed. Rep. 66,) cited on behalf of appellants, was an
action brought on this state of facts:   On the 16th of March,
1867, the treasurer of the United States made his draft on
the First National Bank of Baltimore, a government deposi-
tory, for $1609.55, payable to the order of William Orndorff.
This draft, apparently indorsed by the payee and one Hag-
gart, was forwarded by the Shenandoah Valley National Bank,
with its own indorsement, to the Merchants' National Bank
of Baltimore, for collection.   On the 22d of March it was
indorsed by the Merchants' National, and, on presentation,
paid by the First National in due course of business, both
parties supposing the name of Orndorff was genuine.   When
the payment was made, the amount was charged in account
by the First National against the United States, and the draft
forwarded with the next weekly statement to the treasurer,
for credit, which was allowed without objection.   Ten years
afterwards, the United States having become satisfied that the
indorsement of Orndorff was forged, sued the First National
Bank to recover the amount of this credit.   The Merchants'
National Bank having been notified of the suit, employed
counsel to assist the First National in making a defence.
Upon the trial, the forgery was proven, and judgment ren-
dered against the First National for the amount claimed.
The First National paid the judgment, and then brought this
suit against the Merchants' National to recover what was so
paid, on the ground that the latter bank, by its indorsement
of the draft, and receipt of the money thereon, became re-
sponsible for the genuineness of Orndorff's signature.   To this
suit the Merchants' National pleaded the Maryland Statute
of Limitations, and the question presented was, whether the
statute began to run when the draft was paid, or when the

judgment in favor of the United States, against the First National, was rendered. The court held that the statute only began to run when the judgment in favor of the United States was rendered. The decision is based upon the authority of *Cowper* v. *Godward*, 9 Bing. 788, (23 E. C. L. 452,) where it was held, in an action for money had and received, to recover the consideration money of a void annuity, (where the annuity was granted more than six years before the action brought, but was treated by the grantor as a subsisting annuity within that period, although subsequently avoided at his instance,) that the Statute of Limitations did not begin to run until the annuity had been avoided. In that case, TINDAL, Ch. J., in speaking of the question when the statute began to run, said: "That question depends upon another: At what time did the cause of action arise? The cause of action comprises two steps. The first is the original advance of the money by the grantee; the second is the grantor's election to avail himself of the defect in the memorial of annuity. The cause of action, therefore, was not complete till the last step was taken, in Michaelmas term, 1830. If we were to decide otherwise, the grantor of a defective annuity might, in every case, defraud the annuitant by paying the annuity for six years, and then having set aside the securities by pleading the Statutes of Limitations." Ch. J. WAIT, in *Merchants' National Bank* v. *First National Bank, supra,* having quoted from this reasoning of TINDAL, Ch. J., adds: "In the present case, also, the warranty contemplated two things: First, the giving of credit by the United States; and second, its continuance. As the first requirement of this undertaking was complied with, no right of action could arise until the second was broken. ·That certainly did not occur until the United States elected to take back the credit it had given. * * * Here the consideration was paid to get a credit with the United States, and the failure was not complete until the credit which had once been given was withdrawn."

In the present case, if the United States land officers, on the first presentation of the scrip to them, had treated it as valid, and issued patents for lands accordingly, and the forgery of the scrip had only been discovered afterwards, and proceedings had then been instituted declaring the patents invalid on that account, the analogy to those cases, though not complete, would have been much greater than it is, and there would have been plausibility in claiming the rule announced in those cases is applicable here. But the United States land officers discovered the forgery of this scrip, and repudiated it, upon presentation. No one was lulled into a moment's inaction by the conduct of those officers in regard to the scrip. It never accomplished any purpose, either temporary or otherwise, and no impediment lay in the way of bringing the suit, from, at least, the time it is admitted appellants knew of the forgery and worthlessness of the scrip.

We perceive no cause to disturb the judgment below, and it is therefore affirmed.

*Judgment affirmed.*