## Samuel Scaling v. A. J. Knollin, Copartners, etc.

1. SALES—*Of Chattels by One in Possession—Implied Warranty.*— The general rule is that the selling of chattels by one in possession is an affirmation of title and an implied warranty arises from the sale.

2. SAME—*By Agents—Implied Warranties.*—Where a vendor in making a sale is acting merely as an agent and this fact is known to the purchaser at the time, the principal alone will be held upon the implied warranty of title and the agent will not be liable; and this will be so whether the fact that the agent was acting for a known principal was disclosed by the agent himself or was otherwise brought to the knowledge of the purchasers.

3. AGENTS—*When Personally Liable.*—Where a vendee knows that the vendor is a broker, and although there is reason to believe he is selling property for some principal, yet if he does not see fit to bind his principal by the form of the contract made, by contracting in his own name, he may become liable as a vendor.

4. SAME—*The Rule in Verbal Contracts, When the Agent Binds Himself.*—It is a settled rule in verbal contracts, if an agent does not disclose his agency and name his principal, he binds himself and becomes subject to all the liabilities, expressed and implied, created by the contract and transaction in the same manner as if he were principal in interest.

5. NOTICE—*When the Mere Fact that a Person is an Agent is Not Notice that He is Not Selling His Own Goods.*—The mere fact that a person is an auctioneer is not sufficient notice to purchasers that he is not selling his own goods.

6. PRESUMPTIONS—*As to the Existence of the Common Law.*—Where the law of the place of the contract is not in evidence the presumption is that the common law prevails at such place as interpreted by the courts of this State.

7. ELEMENTS OF DAMAGES—*Costs in Defending Title After Notice.*— *Failure of Title.*—Where a purchaser of personal property is made

94    443
96   ³121

defendant in a replevin suit for the recovery of such property and serves a notice upon his vendor to defend the title, such notice may be regarded as concluding the defendant as to the fees and costs paid in defending the title.

**Action upon an Implied Warranty.**—Failure of title. Error to the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the October term, 1900. Affirmed on a remittitur, etc. Opinion filed April 8, 1901.

**Statement.**—In November, 1894, some 2,596 head of sheep were stolen from Griffith W. Edwards, and shipped by J. M. McLain from Rifle, Colorado, to Chicago, Illinois, billed to said McLain, the shipper, as consignee. The shipment was made with privilege of unloading and selling at Kansas City, with benefit of through freight rates. McLain unloaded the sheep at Kansas City and arranged with Scaling & Tamblyn, live stock brokers at Kansas City, to sell them for him. A. J. Knollin & Co., the defendants in error, bought the sheep from Scaling & Tamblyn. The following stipulation as to some of the facts was filed in the suit by the parties:

" It is here agreed and stipulated between the parties that on the 30th day of November, 1894, at Kansas City Stock Yards, the plaintiffs, A. J. Knollin & Co., bought and had delivered to them 2,596 sheep, weighing 252,910 pounds, and paid for the same at the rate of $2.40 per hundred pounds, making a total price of $6,069.84. That the said sheep were sold and delivered to the plaintiffs as above stated, by or through the defendant firm,`Scaling & Tamblyn; but as to whether Scaling & Tamblyn acted only as agents or commission merchants, disclosing their principal, or in their own behalf in making such sale, or as to whether they by such sale in any way incurred any liability to Knollin & Co. by reason of either an express or implied warranty of title to the sheep, or otherwise, the parties hereto do not stipulate or agree. And it is further agreed that said sheep were shipped by J. M. McLain from Rifle, Colorado, to Chicago, Illinois, consigned to himself, on a through bill of lading, with the privilege of stopping to sell the sheep at the Kansas City Stock Yards. That said McLain arrived with said sheep at the Kansas City Stock Yards on the 30th of November, 1894, and placed the sheep in the hands of Scaling & Tamblyn to be sold by them."

Scaling v. Knollin.

The writing given by Scaling & Tamblyn to defendants in error to evidence the sale, called by the plaintiff in error a " bill of parcels " and by defendants in error a " bill of sale," is in the words and figures following :

" SAMUEL SCALING, St. Louis.    W. L. TAMBLYN, Chicago.
KANSAS CITY STOCK YARDS,
KANSAS CITY, Mo., Nov. 30, 1894.
A. J. KNOLLIN,
To SCALING & TAMBLYN, Dr.

| Cattle | Hogs | Sheep | Weight | Dock | Price | amount | total |
|--------|------|-------|--------|------|-------|--------|-------|
|        |      | 846   | 82710  |      | 2.40  | 1985 04 |      |
|        |      | 1750  | 170200 |      | 2.40  | 4084 80 |      |
|        |      |       |        |      |       | ——6096 | 84    |

Savana.

Rec'd payment.
SCALING & T."

In the course of the negotiations Westfall, a representative of Scaling & Tamblyn, and Knollin, representing defendants in error, went together to the office of the railroad company, and the freight agreement or original bill of lading was produced.   It showed McLain both as consignor and consignee.   The purpose of the visit to the freight office was to satisfy Knollin that upon purchasing he would get the through freight rate.   Whether he saw that McLain was the consignee named in the bill of lading is controverted.   As the sheep were weighed, scale tickets were made out, which named McLain as consignor and Scaling & Tamblyn consignees and Knollin as buyer.   These scale tickets were marked by Knollin with the price and his initials.   In order to enable defendants in error to get the sheep from the Kansas City Stock Yards, an order from McLain was procured by Scaling & Tamblyn and given to defendants in error.   Defendants in error arranged with the C. M. & St. P. R. R. Co. to ship the sheep to Chicago.   A new, or substitute bill of lading was made out by this company, in which the shipment was described as being on " through billing used on twelve cars consigned by J. McLain to J. McLain."   Defendants in error paid Scaling & Tamblyn the agreed price for the sheep and paid the railroad company the freight bill.   Scaling & Tamblyn in turn

paid the defendants in error the adjusted proportion of the freight from Rifle to Kansas City. The balance of the sum received by Scaling & Tamblyn as the purchase price of the sheep was turned over by them, less their commissions, to McLain.

Defendants in error, through the George Adams & Burke Company, a firm of brokers, sold the sheep at the Union Stock Yards in Chicago, in various lots, to Miller & Company, Bishop, Babcock and Shirlock. These latter four parties were obliged by actions of replevin to return the sheep to Edwards, the owner, from whom they had been stolen. They severally sued the George Adams & Burke Company, the brokers who had sold to them, and recovered the amounts paid by them severally as purchase prices of the sheep. The Adams & Burke Company sued their principals, defendants in error, and recovered these same amounts from them. And defendants in error in turn prosecute this suit against plaintiff in error, the surviving partner of the firm of Scaling & Tamblyn, to recover the amount paid by defendants in error to Scaling & Tamblyn for the sheep.

In each of the various suits brought by the owner against the parties to whom the sheep were sold by the George Adams & Burke Company to recover possession of the sheep, a notice similar to the following was served upon Scaling & Tamblyn by the defendants in error:

"Notice to Scaling & Tamblyn of suit of Edwards v. Miller (U. S) Circuit Ct. Dist. of Indiana, that the sheep in question in said suit are part of the lot sold A. J. Knollin & Company by said Scaling & Tamblyn November 30, 1894; that said Edwards claims he is the owner of said sheep and was such owner before and at the time they were sold by said Scaling & Tamblyn to Knollin & Company; that Edwards claims that said sheep were stolen from him and that he never rightfully or legally parted with the title or right to possession of the said sheep; demands that Scaling & Tamblyn appear and defend said action and save Knollin & Company harmless, or be bound by such judgment as may be rendered."

The number of sheep recovered by the owner in these

several replevin suits aggregated 2,379, which was 217 less than the number delivered by Scaling & Tamblyn to defendants in error.

Upon the trial of the cause a jury was waived and the court found the issues for the defendants in error and assessed their damages at $10,918.76, which amount apparently included the purchase price of the entire 2,596 sheep sold and delivered by Scaling & Tamblyn to defendant in error, not excluding the 217 head which were not replevied. The amount of the damages also included interest on the purchase price, freight and interest thereon, and attorneys' fees and costs in the various suits which resulted from the transactions, with interest thereon.

To review the judgment upon the finding this writ of error is prosecuted.

FREDERICK C. HALE, attorney for plaintiff in error; M. W. ROBINSON and LOUIS H. WATERS, of counsel.

ALBERT A. VEEDER, and MASON B. LOOMIS, attorneys for defendants in error.

MR. JUSTICE SEARS delivered the opinion of the court.

The theory upon which this recovery is based is that of a breach of an implied warranty of title by seller to buyer. The chief controversy in the cause is as to whether Scaling & Tamblyn so dealt as to bind themselves as principals in the transaction, or merely acted as agents of a known principal, for whose obligations upon the sale they were not liable. It is not contended that Scaling & Tamblyn in express terms disclosed their principal or the fact of their agency. But it is contended by the learned counsel for appellant that the fact that they were known as commission brokers, together with the further fact that the sheep were consigned to McLain, must be taken as affording notice to defendants in error that Scaling & Tamblyn were acting as agents only, and that their principal was McLain. It appears that defendants in error were in no way brought in contact with McLain personally in the

course of the transaction, and that Knollin, who conducted the negotiations for defendants in error, never saw McLain or heard of him, except it be by having seen his name in the bill of lading or upon the scale tickets. In this state of the evidence, the determination of the question of liability depends upon the construction and force to be given to the various writings, viz., the statement, whether it be called a bill of parcels or a bill of sale; the bill of lading, and the scale tickets, as constituting a contract by Scaling & Tamblyn, or as affording notice that they acted in the capacity of agents only for McLain.

The general rule is that the selling of chattels by one in possession thereof is an affirmation of title, and an implied warranty of the title arises therefrom. Story on Sales (4th Ed.), 367; 1 Parsons on Contracts (6th Ed.), Secs. 573–4; I. C. R. R. Co. v. Leidig, 64 Ill. 151; Morris v. Thompson, 85 Ill. 16; Shattuck v. Greene, 104 Mass. 42.

And a constructive possession by the vendor is sufficient in this behalf. Whitney v. Heywood, 6 Cush. 82; Shattuck v. Greene, *supra.*

We are inclined to the veiw that the stipulation of facts, which states that the sheep were placed in the hands of Scaling & Tamblyn, is sufficient to warrant the trial court in finding that the sheep were in the possession of Scaling & Tamblyn when sold by them. If, however, the agency of Scaling & Tamblyn was known to defendants in error when the transaction was had, and it was known that by the sale they were obligating McLain and not themselves, then the known principal alone was bound upon the implied warranty of title and the agents were not liable. Chase v. Debolt, 2 Gil. 371; Seery v. Socks, 29 Ill. 313.

And this would be so whether the fact that the agents were acting only for the known principal was disclosed by the agents themselves or was otherwise brought to knowledge of the vendees. Warren v. Dickson, 27 Ill. 115.

It is not claimed that Scaling & Tamblyn disclosed their agency and their principal; but it is claimed that the fact was otherwise brought to the knowledge of defendants in

error, viz., by the bill of lading and scale tickets. We are of opinion that the trial court was fully warranted in finding from the evidence that defendants in error had no such notice or knowledge. Assuming that Knollin, who represented defendants in error, did see the freight bill, or bill of lading, and that he must have observed that McLain was named therein as consignor and consignee, yet we regard that circumstance as entirely consistent with a *bona fide* belief that Scaling & Tamblyn owned the sheep and were selling them in their own behalf. If Scaling & Tamblyn had bought the sheep from any shipper, who had brought them to the Kansas City Stock Yards for a market, precisely the same conditions might be expected to obtain in the matter of bill of lading and scale tickets. The bill of lading would in that event have named the shipper as consignee and upon a sale of the sheep to Scaling & Tamblyn, who wished to resell in the same market, no change would naturally be made in the bill of lading until they in turn sold to some one who wished to ship again. We are unable to agree with the contention of the learned counsel for plaintiff in error, that the facts of this case establish knowledge upon the part of defendants in error of the agency of Scaling & Tamblyn.

But aside from this ground for sustaining the finding of the trial court as to a liability, there is another reason why that finding must be sustained. It is the rule established in this State, that even if the party buying knows that the party selling is a broker, and although there be reason to believe that he is selling for some principal, yet if the party selling does not see fit to bind his principal by the form of the contract made, and does bind himself by the form of the contract, the agent thus contracting in his own name may be held to the liability of a vendor. Wheeler v. Reed, 36 Ill. 81; Burton v. Goodspeed, 69 Ill. 237; Mead v. Altgeld, 136 Ill. 298.

A leading case upon this doctrine is Mills v. Hunt, 20 Wend. 431. In that case the sale was made by auctioneers, and it was readily inferable from that fact that they were

acting for some undisclosed owner.   A writing called a "bill of parcels" was given by the auctioneers to the vendee—a statement much like the one given in this case.   Upon failure to get title to some of the goods thus sold, the court held the auctioneers personally liable as vendors upon an implied warranty of title, and said:

"The sale of the several articles in this case was made by Mills, Brothers & Co., and the bill of parcels made out in their copartnership name, without disclosing the fact that they were acting as the agents for others.   The mere fact that they were auctioneers, was not sufficient notice to the purchaser that they were not selling their own goods. (Jones v. Littledale, 1 Nev. & Perry's R. 677.)   In the case of Magee v. Atkinson, (2 Mees. & Wels. 440), where the broker had sent in a note of the sale to the purchaser in his own name, it was held that evidence of a custom in Liverpool, to send in brokers' notes without disclosing the name of the principal, could not be received for the purpose of protecting the broker from personal liability.   At this day the law must be considered as settled, that a vendor or purchaser dealing in his own name, without disclosing the name of his principal, is personally bound by his contract; and it makes no difference that he is known to the other party to be an auctioneer, or broker, who is usually employed in selling property as the agent for others.   Even where he discloses the name of his principal, if he signs a written contract in his own name merely, which contract does not upon its face show that he was acting as the agent of another, or in an official capacity in behalf of the government, he will be personally bound thereby."

In Wheeler v. Reed, *supra*, the sale was made by a commission broker, and the vendee "supposed" that he was selling as a broker for some one, and also "supposed," but did not know, that he was selling as agent for one Barrows, who was in fact the principal.   Upon proof of an oral warranty of quality, a recovery was sustained against the commission broker, as vendor, for breach of such warranty.

The Supreme Court of this State, citing and following the decision in Mills v. Hunt, *supra*, said, referring to Mills v. Hunt:

"And the court further held, even when he discloses the name of his principal, if he signs a written contract in his

own name merely, which does not show upon its face that he was acting as the agent of another, or in an official capacity in behalf of the government, he will be personally bound thereby. This rule has not been modified or changed by any decision of this court. The case in 2d Gilm. 371, Chase v. Debolt, was a case where the agency was disclosed at the time of the contract. The plaintiff knew he was working for Bishop Chase, and not for defendant. The case of Warren v. Dickson, 27 Ill. 118, holds merely, that where the fact of agency is known, it is not necessary to disclose it. The case of Marckle v. Haskins, Ib. 382, decides only, if one bargains with an agent, knowing him to be such, and the principal has recognized the transaction, a warranty by the agent is a warranty of the principal, and he is the proper party to be sued for a breach. The case of Seery v. Socks et al., 29 Ill. 313, decides merely when a person professing to act as an agent discloses the name of his principal, he assumes no personal responsibility unless he acts fraudulently. These cases do not militate against the rule laid down in 20th Wendell. It is a settled rule in verbal contracts, if the agent does not disclose his agency and name his principal, he binds himself and becomes subject to all liabilities, expressed and implied, created by the contract and transaction, in the same manner as if he were the principal in interest. Davenport et al. v. O'Riley et al., 2 McCord, 198; Allen et al. v. Rostain, 11 Serg. & Rawle, 362, 375; Mauri v. Hefferman, 13 Johns. 58, 77. And the fact that the agent is known to be a commission merchant, auctioneer, or other professional agent, makes no difference. Waring v. Mason, 18 Wend. 426; Hastings v. Lovering, 2 Pick. 214; and the case in 20th Wend., 431, Mills v. Hunt, which we have already cited. Any other rule, it seems to us, would be fraught with some hardship and great inconvenience, so much of the business of our cities being transacted through factors and agents."

The memoranda of the sale made by Scaling & Tamblyn and delivered to defendants in error, whether it be regarded as constituting a bill of sale or be considered merely as a bill of parcels, is nevertheless the written evidence of the transaction. It expresses that Scaling & Tamblyn in their own names and behalf, and not in the name of any other, have sold the stated number of sheep to defendants in error. If it is not a contract of sale, it is evidence of a contract of sale; and the contract, thus evidenced, is made by Scaling &

Tamblyn in their own names and in their own behalf, and it binds them as vendors.

Had Scaling & Tamblyn desired to avoid a personal liability in the transaction, they could readily have done so by contracting in the name of McLain, *i. e.*, by disclosing their principal. Either through carelessness or by preference they failed to disclose their agency, and having dealt as principals in making the sale, they must be held to the liability which results.

The law of the place of the contract not having been put in evidence, we must presume that the common law there obtains, as interpreted by the decisions of this State.

The finding of the learned trial court upon the issues was in our opinion right, but the assessment of the defendants' damages is for an amount which can not be entirely sustained. Two hundred and seventeen of the sheep sold by Scaling & Tamblyn to defendants in error were never replevied by Edwards, the owner of the sheep which were stolen. Therefore as to these 217 sheep the title did not fail, and the purchase price paid for them should not have been included in the damages awarded.

The recovery also includes freight and attorneys' fees and costs in the various suits which resulted from the reclaiming of the stolen sheep. The freight bill was paid by defendants in error to the Railroad Company and not to Scaling & Tamblyn. The *pro rata* amount thereof to cover shipment from Rifle, Colorado, to Kansas City, was repaid to defendants in error by Scaling & Tamblyn. Defendants in error are, therefore, not entitled to recover the freight payments.

It is contended by counsel for plaintiff in error that the recovery of amounts paid as costs and attorneys' fees by defendants in error, in the various suits which followed the reclaiming of the stolen sheep by Edwards, are not properly to be recovered as defendants in error's damages herein, and in this behalf they also cite and rely upon the decision in Lunt v. Wrenn, 113 Ill. 168. But that decision merely holds that there " the suit was unnecessarily re-

sisted, and costs are not chargeable against the vendor in such cases." But here the defense of the title in the replevin suits brought by Edwards, the owner, was not unnecessarily interposed. It was proper and essential to their own safety that defendants in error should compel Edwards to prove his superior title. Moreover, notice of the suits was given to Scaling & Tamblyn, with a demand that they should defend the title to the sheep which they had sold. This they neglected to do. Had they viewed the title of Edwards as indisputable and desired to avoid any expense in opposing it, they could have so informed and directed defendants in error. The notice may be regarded as concluding plaintiff in error as to the fees and costs paid in defending the title. Drennan v. Bunn, 124 Ill. 175.

But the same reasoning does not apply to the attorneys' fees and costs paid in the subsequent suits brought by the several vendees of the George Adams & Burke Co. to recover of that company the purchase prices paid by them. The failure of title was established by the determination of the replevin suits. Once that was established, it only remained for each vendor to reimburse his innocent vendee for the amount of money paid by him. There was no longer any excuse for contest. As to these suits the announcement in Lunt v. Wrenn, *supra*, does apply, viz.: "The suit was unnecessarily resisted and costs are not chargeable against the vendor in such cases."

A motion by defendants in error to strike out certain parts of the record is denied. The motion is based upon a supposed want of identification of certain exhibits. We are satisfied from examination that there is no substantial merit in the contention.

We regard as items properly allowable in assessing the damages of defendants in error, $5,669.60 as the proportionate amount paid for the 2,379 head of sheep, excluding the 217; $1,417.47 as interest thereon from November 30, 1894, until December 6, 1899; $105.38 costs in replevin suit by owner against Miller, with interest from March 8, 1895, to December 6, 1899; and $84.31 costs and interest thereon in

replevin suit by owner against Babcock. The amount of the attorneys' fees in the replevin suits as separated from the other suits can not be determined from the abstract of the record, nor can the costs in the replevin suits by the owner against Bishop and Sherlock. The total amount of these items properly allowed is $7,276.76. If the defendants in error shall remit from the judgment the excess over this amount, viz., $3,641.99, within ten days hereafter, the judgment will be affirmed as to $7,276.76; otherwise it will be reversed and the cause will be remanded. In either event the plaintiff in error will recover his costs in this court against defendants in error.

Affirmed upon remittitur.