(No. 14933.—Reversed and remanded.)
OLE NELSON *et al.* Appellants, *vs.* ANDREW C. PEDERSEN *et al.* Appellees.

*Opinion filed December 19, 1922.*

1. CONTRACTS—*when contract will be rescinded for unilateral mistake.* A contract may be rescinded, but not reformed, at the suit of one party who without negligence has entered into the contract through a material mistake of fact, when such can be done without injustice to the other party.

2. SAME—*when equity will rescind alleged contract for conveyance on ground of mistake.* A purchaser will be entitled, in equity, to a rescission of a contract for the conveyance of a certain lot where the evidence shows he intended to buy the adjoining lot, which was the one advertised and shown him by the vendor's agent but which the vendor did not own, and where the vendor, although he must have known of the vendee's mistake, remained silent, he will not be allowed to set up the negligence of the purchaser in not reading the description in the abstract, which was copied into the contract after the preliminary negotiations were closed.

APPEAL from the Circuit Court of Winnebago county; the Hon. ROBERT K. WELSH, Judge, presiding.

ROY F. HALL, and J. E. GOEMBEL, for appellants.

FISHER, NORTH, WELSH & LINSCOTT, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants filed their bill in the circuit court of Winnebago county to cancel or rescind a contract entered into between them and the appellees for the conveyance of certain property in the city of Rockford, on the ground of mistake in fact as to what property the complainants agreed to buy. The bill sets out that at the intersection of Fifteenth avenue and Eleventh street, at the northeast corner thereof, is situated a tract of land known as block 3 in Budlong's subdivision. This block has been subdivided, but so far as is shown by the record the lots were not num-

bered. The bill alleges that appellants contracted for and agreed to buy a lot 50 feet in width, the southwest corner of which is 100 feet north of the southwest corner of block 3; that all the lots in that part of block 3 are 50 feet in width, and the lot contracted for was the third lot north of the south line of block 3; that after the making of the first contract for the property Nelson paid the sum of $10 to Blewfield & Bourke, who had the lot for sale for the appellees, to bind the bargain; that the first contract, which was also the receipt for this $10, correctly described the third lot from the south line of block 3 by metes and bounds; that thereafter Blewfield, acting as agent for the appellees, took the abstract, on the suggestion of Nelson, to an attorney in the city of Rockford, who examined the same, and later, at the suggestion of Blewfield, drew the final contract signed by the parties; that the final contract described the fourth lot north of the south line of block 3 rather than the third lot. The fourth lot was the one described in the abstract, and the attorney, in drawing the final contract, used the description contained in the abstract, without talking with anyone concerning the property contracted for. In both instances the description was by metes and bounds. The bill alleges that Nelson, without knowledge that the fourth lot was being conveyed to him, paid the additional sum of $500 on the purchase price. Thereafter he purchased the first and second lots north of the south line of the block, intending to build a house on the first three lots. It is charged in the bill that some time after this he discovered that the contract called for the fourth and not the third lot; that he went to Pedersen and requested that he cancel the contract and re-pay him the money, which Pedersen declined to do. The circuit court, on hearing in open court, dismissed the bill for want of equity.

Appellants claim that the testimony shows a mutual mistake, but appellees claim that while Pedersen did not

know when he traded for the lot described in the contract what lot he had acquired, yet he did find out a short time thereafter, and that he knew that the lot he was contracting to sell to appellants was the fourth and not the third lot, and the appellees contend that appellants should have known, and are guilty of negligence in not knowing, that such was the case.

Ole Nelson testified that he saw the sign of Blewfield & Bourke on the third lot; that he spoke to Blewfield about the lot and was told that he (Blewfield) had it for sale; that Blewfield told him that it was the third lot that he had for sale, and showed him that lot. Numerous other witnesses on behalf of appellants testified that the sign carrying the words, "Lot for sale by Blewfield & Bourke," was nailed to a tree on the third lot and not on the fourth lot. Nelson testified that he did not at any time consult with Pedersen but that all of his transactions were with Blewfield. In this he is corroborated by Blewfield, who testified that Pedersen acquired the lot in block 3 in a trade; that at that time he (Blewfield) showed Pedersen the third lot and told him that that was the one he was trading for; that Pedersen afterwards told him that he wanted to sell the lot he had traded for. Blewfield also testified that he put the sign on the third lot, and that he showed Nelson the third lot and told him that was the lot he had for sale which belonged to Pedersen. He testified that the description was not used in his transactions with either Pedersen in acquiring the property for him or in listing it by Pedersen with him afterwards, nor in his conversation pertaining to the sale of the lot with Nelson. He testified that he did not show Nelson any other lot except the third lot and never talked with him about buying the fourth lot; that at Nelson's request he took the abstract to a lawyer and had it examined and that the lawyer drew the final contract; that he did not know that the final contract called for the fourth lot, as shown by the abstract. He identified

a copy of the first contract and receipt, in which the third lot was described by metes and bounds. He also testified that to the best of his recollection Pedersen signed the original of the first contract and receipt given to Nelson. Axel E. Sundberg, another real estate dealer, testified that Pedersen listed the third lot with him for sale; that he and Pedersen went out to the property and looked over it; that Pedersen showed him the third lot; that he saw at that time Blewfield & Bourke's sign on the lot; that Pedersen told him at that time that he thought Blewfield had sold it, but the price was too cheap and he did not want to take that price for it; that Pedersen showed him where the lot was located, and in so doing showed him the third lot; that he also put his sign on that lot; that Pedersen and he went upon the third lot and Pedersen asked him if he could sell it for him. In defense Pedersen testified that he knew at the time the contract was made that he was selling the fourth lot, and that he did not own the third lot; that when he showed Sundberg the lot he told him that he thought Blewfield & Bourke's sign was not on the right lot, but that it did not matter, as the abstract would show; that at the time he traded for the lot he did not know whether it was the third or fourth and did not care,— that it was all the same to him; that he told Sundberg that he was placing the fourth lot with him. Sundberg was called in rebuttal and flatly contradicted Pedersen's testimony as to his telling him that it was the fourth lot. This was all the testimony in the case.

Without regard to whether or not Pedersen was mistaken as to the property to be transferred, and adopting his statement that he was not, the record shows that he knew that Blewfield & Bourke's sign was on the third lot. Blewfield's testimony tends to show that Pedersen did not know that he had secured the fourth lot in the trade by which he became seized of the property, and certainly does show that Blewfield thought the lot which Pedersen had acquired and

305—39

which he had listed with him was the third lot. All of appellants' evidence shows that Nelson thought the lot he was buying was the third lot and not the fourth lot. It is not contradicted that he bought the first and second lots after making the contract sought to be rescinded in this case; that he bought three lots for the purpose of building a home. It cannot be presumed that he would buy a lot disconnected with the other two for that purpose. Blewfield was Pedersen's agent. His representations to Nelson were the representations of his principal. Whether or not the record establishes a mutual mistake, it undoubtedly does establish a unilateral mistake on the part of Nelson, and Pedersen knowing, as he must have known, that Blewfield was seeking to sell for him the third lot, should not, in equity, be permitted to remain silent when he should have explained that he owned the fourth lot instead of the third, if he, in fact, knew such was the case. The evidence in this case discloses a situation where the vendor offered to sell one thing and the vendee believed he was buying another. Such a situation does not constitute ground for reformation of the contract, for in cases of reformation the mistake is in the expression of an agreement of the parties whose minds have met. In this case their minds did not meet. There was no agreement. The appellants by the written contract agreed to buy property different from that which they supposed they were buying. There was no mutual mistake. A mistake on one side, however, may be ground for rescinding though not for reforming a contract, where such party, without negligence, has entered into a contract through a material mistake of fact, when such can be done without injustice to the other party. (*Bivins* v. *Kerr,* 268 Ill. 164; *Morgan* v. *Owens,* 228 id. 598.) There can be no doubt from this record that appellants mistakenly contracted for property which they did not intend to buy. If Pedersen's testimony is to be taken as true, he entered into the con-

tract with a full understanding. Such a case is ground for equitable relief.

Appellees, however, contend that there was negligence on the part of appellants in this case in not discovering that the land conveyed was the fourth and not the third lot; that the attorney who was engaged to examine the abstract at the suggestion of Nelson knew that the lot contained in the abstract, and in the contract later drawn by him, was the fourth and not the third lot, and that such knowledge is to be imputed to appellants. There is nothing in the record to show that the attorney had any knowledge of what had taken place between Nelson and Blewfield, acting for Pedersen, or that he had any knowledge that the lot described by metes and bounds in the abstract was the fourth lot. He could not have known that such was true without knowledge of the width of the other lots lying to the south in block 3. No such knowledge is shown or can be inferred. He was requested to pass upon the title contained in a certain abstract and to draw a contract. He found the title good and so reported to the purchaser. There is nothing in the record to show that he had any knowledge as to what lot Nelson was buying, other than what was shown in the abstract. While the record does show that Nelson did not read the second contract, which contained the description by metes and bounds of the fourth lot, it also shows that he relied upon Blewfield, who was representing Pedersen, and who went with him upon the property and showed him the third lot. It also shows that the representation made by Blewfield (which was, doubtless, as Blewfield understood the facts,) was that the seller was contracting to convey the third lot. In such condition of the record we cannot say that the appellants were guilty of negligence in not reading and understanding that the property described was the fourth and not the third lot. That the contract was induced by the representations of Blewfield cannot be doubted. They were material, and though honestly made were not true. We are of

the opinion, therefore, that the facts show ground for equitable relief and that the court erred in dismissing the bill for want of equity.

The decree of the circuit court is therefore reversed and the cause remanded, with directions to that court to enter a decree canceling the contract as prayed in the bill, and that the appellees be decreed to re-pay the sum of $510, with interest at five per cent from the date of the payment of said sum by Nelson, and that the payment of such sum and interest be decreed to be a lien upon the property described in the contract entered into.

*Reversed and remanded, with directions.*