### Frank C. Toombs, Appellee, v. James Lewis, Appellant.

Opinion filed February 2, 1934. Rehearing denied October 22, 1934.

F. C. MESERVE and SUMNER & LEWIS, for appellant.

FRED W. GEE, for appellee; JOHN SEBAT, of counsel.

MR. JUSTICE STONE delivered the opinion of the court.

This was a suit brought April 18, 1932, by appellee, hereinafter called the plaintiff, against appellant, hereinafter called the defendant, in the circuit court of Lawrence county.

The first count of the declaration alleged that on February 21, A. D. 1932, the defendant ordered the plaintiff to sell 75. units of $8 interest bearing allotment certificates of the Associated Gas & Electric Company at a price of $38 per unit or better; that the plaintiff found a purchaser for the $8 certificates at $38 per unit; that the plaintiff advanced the purchase

price of $2,850 and instructed the defendant to forward the $8 certificates sold on his behalf; that the defendant failed to forward such certificates but forwarded 75 units of $1.60 interest bearing allotment certificates which were refused by the purchaser; and that defendant had since failed and refused to reimburse the plaintiff.

There were the usual common counts in assumpsit except that a demurrer was sustained to the count for money paid under mistake. The jury returned a verdict for the plaintiff for $2,835 and interest. Plaintiff waived the interest on remittitur ordered by the court and a motion for new trial was denied.

The defendant appealed. Plaintiff moves to dismiss the appeal and submits in support thereof that the clerk did not certify that the bill of exceptions is a part of the record, or that the matters filed constitute the complete record, or that the matters filed constitute a complete transcript of the record.

The defendant had filed a short record and obtained an extension of time for filing the bill of exceptions. The certificate of the clerk to the short record gives the title of the cause to which the certificate applies and certifies that the foregoing is a "true and correct copy of the records and files in the case . . . . except the bill of exceptions" and that the person certifying is the legal custodian of the records, files, and seal of office in the court in which the cause was tried. The certificate to the bill of exceptions gives the same identification of the cause and the person certifying and certifies that "the foregoing is a true and correct copy of the bill of exceptions filed in the case . . . , as appears of record and in the files of Lawrence County."

When the clerk certifies that a transcript is a true copy of the records and files except the bill of exceptions we cannot say that he may have intended to

except other matters also appearing in the files. We think that taken together the certificates clearly show that the transcript is a copy of the complete records and files in the case. The cases cited by the plaintiff do not interfere with this result. In *City of Chicago v. Wohlbach,* 316 Ill. 203, 204, there was no certificate that the bill of exceptions filed was a part of the record. In *Bartlett v. Woodbine Sav. Bank,* 57 Ill. App. 423, the certificate followed the praecipe which called for no pleadings other than the declaration. In *Glos v. Randolph,* 130 Ill. 245, there was apparently no certificate of the clerk. In *Hosmer v. People,* 96 Ill. 58, the certificate was not signed, sealed, or dated. In *Mathes v. William Barr Lumber Co.,* 248 Ill. App. 160, there was no authentication of the transcript by the clerk. In *Hiser v. Baker,* 115 Ill. App. 12, there was no certificate that the transcript of record was a transcript in any cause. The plaintiff also submits in support of the motion to dismiss that no praecipe for record was filed with the clerk of the circuit court. This is not a ground for dismissing the appeal especially where it appears that a complete record has been filed. *People v. Chicago Title & Trust Co.,* 266 Ill. 224.

The evidence showed that the plaintiff sent his agent, Jewett, to see the defendant to persuade him to sell certain coal company bonds which were not listed on the general market. While there Jewett learned that defendant possessed interest bearing allotment certificates of the Associated Gas & Electric Company. He computed what he considered to be the value of the certificates by looking up the value of securities into which the allotment certificates were convertible. He computed a value of $13 or $14 on a share. He then found a list price of $42 per share for Associated Gas and Electric Company interest bearing allotment certificates. He said there was something about the transaction that did not meet the eye, but that the or-

ganization of this company was very complicated. Defendant had paid about $27 per share for the certificates. Capitalizing the $1.60 at six per cent share would give a value of over $26. Jewett testified that such shares were worth just what you could get for them. Jewett advised the defendant to sell his allotment certificates and said that his principal, the plaintiff, would be glad to handle the transaction.

Defendant then went to Mr. Gee, a banker, and told him to have the plaintiff sell the certificates for him. Mr. Gee gave an order to plaintiff to sell at $38 upon plaintiff's advice concerning the value. There is some difference in testimony concerning the exact terms of the order to sell, which will be discussed later.

Plaintiff gave an order to his Chicago correspondent to sell at $38 and was advised that the shares brought $38.50. Plaintiff then confirmed to defendant a purchase by him from defendant at $38 and charged defendant at the same time a $15 brokerage charge.

Defendant sent the certificates to the plaintiff's bank at Danville with a draft on the plaintiff for $2,835 attached. Plaintiff instructed his agent to pay the draft and forward the shares. At the time of delivery to the ultimate purchaser it was discovered that the Associated Gas and Electric Company issued allotment certificates bearing $8 interest and also allotment certificates bearing $1.60 interest. The buyer declined to take the $1.60 certificates. This was the first notice to plaintiff and defendant of the difference in the certificates.

Plaintiff sues on the theory that he was the agent of the defendant and that he paid out money for his principal which he ought to receive back. Defendant contends that the transaction constitutes a sale to the plaintiff.

We have previously noted that plaintiff sold at $38.50, confirming his own purchase at $38 and then

charged defendant a broker's commission. He justifies this action by saying that he had an order to sell at $38 and that it was customary among brokers to make the extra profit as additional commission. Defendant's agent, Gee, testified that he gave an order to sell at "$38 or more." Plaintiff's declaration alleged that the order to sell was "$38 or better." It is not necessary to instruct an agent to do the best he can. The law requires it. Furthermore, if in fact it is a custom among brokers to make additional charges without notice to clients and to represent that sales are made for less than is obtained we cannot condone it. Nothing is better settled in the law than that an agent shall not make a secret profit out of sales for his principal in addition to the charge for his services.

Under the circumstances, plaintiff having elected to take the benefits of a sale, contrary to instructions from his principal, we have no hesitation in holding that the defendant may hold him to his bargain.

Plaintiff contends that assuming the transaction to have been a sale, it was a sale made under mistake and can be rescinded.

There is no evidence to support count one of the declaration. The evidence shows that Associated Gas. and Electric Company interest bearing allotment certificates with no further specifications were the basis of the dealings between the parties.

The circumstances under which a contract will be set aside for mistake of fact are set forth in the case of *Steinmeyer v. Schroeppel,* 226 Ill. 9, on p. 13, "If there is an apparently valid contract in writing, but by reason of a mistake of fact by one of the parties, not due to his negligence, the contract is different with respect to the subject matter or terms from what was intended, equity will give to such a party a remedy by cancellation where the parties can be placed in *statu quo.*"

The evidence shows that there was no mistaken assumption by either party except the assumption by the plaintiff that he could get a better price than was possible. The actual certificates were forwarded to the plaintiff. They were plainly marked $1.60 interest bearing allotment certificates. There was nothing which they purported to be which they were not.

Defendant was a farmer, unlearned in the security market; plaintiff was a broker with years of experience in the market. He did not take the trouble to use the sources of information which were certainly more available to him than to the defendant. He did not inspect the certificates before he made his inquiry concerning prices. The manifest weight of the evidence shows the plaintiff to have been negligent in this regard.

The cases cited by the plaintiff are: *Nelson v. Pedersen*, 305 Ill. 606, 610; *Bivins v. Kerr*, 268 Ill. 164; *Morgan v. Owens*, 228 Ill. 598; *Rupley v. Daggett*, 74 Ill. 351; *Lunt v. Wrenn*, 113 Ill. 168, 175; *Drennan v. Bunn*, 124 Ill. 175, 186. The first three require that the party seeking to relieve against the mistake establish lack of negligence on his part. *Rupley v. Daggett* is a case of clear misunderstanding as to terms of the contract. *Lunt v. Wrenn* is a case of a sale of counterfeit scrip. *Drennan v. Bunn* is a case of legal fraud.

There is no evidence to show that market conditions are such or that optional values of the certificates are such that the defendant can be placed in *statu quo*.

In *Jenson v. Muting*, 255 Ill. App. 514, there was a latent defect in the article sold in that the parties negotiated on the basis of current stock of the Radio Corporation of America whereas the stock supplied was stock which had been called in and canceled four years prior to the sale. No inspection of the article would have disclosed this. An inspection of the article in the present case would have given the plaintiff an

accurate description from which he could have obtained the information he desired. It also appears in *Jenson v. Muting* that the parties stood on an equal footing, whereas in the instant case the party making the mistake had superior means of obtaining information.

In the case of *Pierce v. Hoyt,* 260 Ill. App. 182, the purchaser at a foreclosure sale relied on the master in chancery's figures concerning the indebtedness. He inquired of the master because he intended to bid slightly less than the amount of the debt. The master had made a miscalculation and the bid was considerably higher than the amount of the indebtedness. The court found that the bidder was negligent in not discovering the master's miscalculation and refused to set aside the sale. *Steinmeyer v. Schroeppel, supra,* presents a similar situation.

The situation here involved does not concern any misunderstanding between the parties or any false assumption with respect to the subject matter of the sale but an assumption of the plaintiff with respect to collateral facts concerning the value of the shares.

Let us assume that the prices of the shares are reversed and that a sale is being negotiated. The owner of the shares asks the buyer what he will give for them. The buyer mistakenly quotes a list price of lower valued shares not knowing there are two shares of the same type at different values. After the sale can the seller rescind on the ground that if he had known there were two kinds of shares and that the usual price for his kind was much higher than he received, he would not have sold? We think not. We see no difference in the case where shares are overvalued instead of undervalued.

Generally, a mistake concerning a collateral fact will not justify rescission. Williston, Contracts, sec. 1569. Kerr in his work on Fraud and Mistake (5th

ed.), p. 550, states this rule: "If the buyer purchases the very article at the very price and on the very terms intended by him and the vendor, the sale is complete by mutual assent even though the buyer be totally mistaken in the motive which induced the assent." It should be remembered that in this case the specific shares were forwarded to the plaintiff. After stating the general rule above Kerr goes on to say that the sale cannot be set aside because the seller must have known from the price or from the buyer's general habits that he thought he was buying a sound article.

Avoidance of contracts on the ground of mistake whether at law or in equity is based upon equitable principles. Unless it were a clear case of mistake of fact concerning the subject matter of the transaction we should be disinclined to set aside the bargain which the plaintiff has made for himself where there is such a clear indication of bad faith on his part.

It is unnecessary to consider the other defenses presented. The judgment of the circuit court of Lawrence county will therefore be reversed.

*Judgment reversed.*